**Wilhelmina BROWN, Plaintiff,**

**v.**

**Kenneth APFEL, Commissioner of the Social Security Administration,[1] Defendant.**

**No. 97–CV–6118L.**

United States District Court, W.D. New York.

Jan. 14, 1998.

---

1. Apfel is substituted as a party defendant for his predecessor in office. Fed.R.Civ.P. 25(d).

Catherine M. Callery, Public Interest Law of Rochester, Rochester, NY, for Plaintiff.

Brian M. McCarthy, Asst. U.S. Atty., Rochester, NY, Defendant.

## ORDER

LARIMER, Chief Judge.

### INTRODUCTION

This is an action brought pursuant to 42 U.S.C. § 405(g) to review the final determi-

nation of the Commissioner of Social Security that plaintiff was not disabled, and therefore, was not entitled to disability benefits. This Court finds that the Commissioner's decision was not supported by substantial evidence and accordingly remands case for further proceedings consistent with this decision.

### PROCEDURAL BACKGROUND

Plaintiff Wilhelmina Brown ("Brown") was born on October 7, 1958 and is presently thirty-nine years old. (T. 64).[2] On October 12, 1993, Brown applied for Social Security disability and Supplemental Security Income ("SSI") benefits. (T. 64–66; 87–90). She claimed that she was unable to work since April 12, 1993 due to "schizophrenia, left shoulder and neck problem". (T. 102). The Social Security Administration denied her applications initially on March 31, 1994 and Brown did not appeal. (83–86; 92–95). Brown reapplied for benefits under both programs on July 12, 1994. (T. 147–149; 193–194). Once again, Social Security denied these applications initially and upon reconsideration. (T. 152–192; 196–204).

Plaintiff requested a hearing before an Administrative Law Judge ("ALJ") which was held on May 23, 1995. (T. 205; 32–63). Plaintiff appeared at the hearing and was represented by attorney David E. Ralph.

On March 29, 1995, the ALJ issued a decision in which he found that plaintiff could still perform her past relevant work as a transportation aide and child care worker, and therefore was not entitled to disability benefits. (T. 18). On January 31, 1997 Social Security's Appeals Council issued the Commissioner's final decision. (T. 5–7). Because the Appeals Council refused to review the ALJ's decision, plaintiff commenced this action. Presently before the Court are the parties' motions for judgment on the pleadings pursuant to Federal Rules of Civil Procedure 12(c).

### FACTUAL BACKGROUND

A. *Medical Evidence*

Brown has a long history of treatment for mental conditions, usually diagnosed as

---

**2.** "T. ___" refers to the page of the transcript of the Administrative Record filed by the Commis-

sioner with his Answer.

schizophrenia. In March 1980, she was admitted to the Elmira Psychiatric Center for a week due to an acute schizophrenic episode. (T. 279–85). Several years later, in a 1988 discharge note from the Chemung Out-patient Services Unit of the Psychiatric Center, the reporter noted that "[w]hen out of the hospital she needs structure in her daily routine, overall monitoring of her clinical condition and course of chemotherapy and general vocational supervision in an effort to move her into a work program or gainful employment. When the client is not provided with this structure and supervision of her medications she can regress very quickly and become withdrawn and dysfunctional." (T. 113).

During the 1980's, Plaintiff apparently received long-term care from Dr. Kahn at Chemung County Mental Health Clinic. (T. 113–115). Throughout this period, and continuing, Brown received monthly injections of Prolixin Decanoate to control symptoms of her schizophrenia.[3] (T. 118, 122).

In May 1991, she transferred her care to Family Services of Chemung County, when her former doctor stopped accepting Medicaid. (T. 119–23). These treatments included counseling sessions and continued injections. (T. 238–50). The record shows many short treatment sessions in which Brown was characterized as "normal". (*See, e.g.* T. 238, 239). Plaintiff continued with these treatments even after her hearing in March 1995. (T. 331–33).

As part of the process to apply for disability benefits, plaintiff underwent at least two one–time medical evaluations. Dr. Jeffrey Donner, Ph.D., tested Brown in November 1993. (T. 229–30). Brown told the doctor that she took Haldol to control weakness on the left side of her body.[4] Dr. Donner reported that in the past, Brown had been treated and hospitalized for depression, although the record contains little independent evidence for this diagnosis. (T. 229). It is

notable that Dr. Donner's report never mentioned Brown's treatment for schizophrenia. Dr. Donner concluded his report by finding that Brown suffered from a Personality Disorder [not otherwise specified], with dysthymic, anxious, dependent and somatic features. (T. 230).

In December 1993, Dr. Faiz Khan undertook a psychiatric examination, also as part of the Social Security process. (T. 140–41). Brown told Dr. Khan that she no longer heard voices, but that she was depressed and suffered from mood swings. (T. 140). She also told Dr. Khan that she was unemployed and had been fired from her last job due to a "misunderstanding" (*Id.*). Dr. Khan concluded his report with the statement that "it appears that patient had a problem with paranoid schizophrenia in the past which is in remission at this time because of her being on medications. Patient has been diagnosed as: Axis I Schizophrenia, paranoid, chronic, in remission . . ." (*Id*).

Plaintiff's treating psychiatrist at Family Services of Chemung County was Dr. Rio Manzano. On several forms Dr. Manzano provided his opinion that Brown was incapable of working due to "schizophrenia, paranoid with acute exacerbations". (T. 265, 266). On January 31, 1995, Dr. Manzano wrote that Brown continued to be treated with individual therapy and psychiatric medications for schizophrenia. He added the following:

> Our agency feels that Wilhelmina is not employable on a ongoing basis. When Wilhelmina becomes "stressed out" or feels overwhelmed, she has psychotic episodes. A structured activity, such as work, would be too much responsibility for Wilhelmina. Client also becomes very psychotic without her medication. Wilhelmina's mental health condition is chronic and she is not capable of working in a low stress job. I

---

3. Prolixin Decanoate is a long-acting injected antipsychotic drug indicated in the management of manifestations of psychotic disorders in chronic schizophrenia. *Physician's Desk Reference* (*"PDR"*) 510 (51st ed.1997).

4. Interestingly, Dr. Donner did not mention that Haldol Decanoate is an injectable antipsychotic drug intended for use in the management of patients requiring prolonged treatment with injections of antipsychotic drugs—"—*e.g.* patients with chronic schizophrenia." *PDR* 1587.

cannot see conditions changing in the future year. (T. 256).

After the Administrative Law Judge issued his decision, Dr. Manzano provided one final letter, co-signed by Brown's therapist, Kelli Glynn and Jean Teitelbaum, the associate clinic director, for the Appeals Council's consideration. (T. 331–33). That report was a point-by-point refutation of the ALJ's decision. In particular Dr. Manzano defended Family Services' use of the word "normal" in their form evaluations. The letter stated that the word "describe[d] the *patient's* description of her symptoms". (T. 332). "'Normal' certainly does not mean that the patient is cured of her mental illness or that it is in remission, and it does not mean that the patient is actually functioning as does a normal person or has become a normal person." (*Id.*).

Dr. Manzano also wrote:

It is my considered medical opinion that Wilhelmina Brown is not capable of working in any capacity, including her former employment as a child care worker or transportation aide. Her psychiatric diagnosis of schizophrenia is not in remission, and her symptoms are still present. Wilhelmina has extreme functional limitation in daily living, social functioning, with deficiencies in concentration and episodes of deterioration in a work-like setting. Wilhelmina has been evaluated many times by myself and our staff and is not capable of working. I can think of none of my patients who is more in need of SSI disability benefits to support her while she continues to receive treatment for her illness.

(T. 333).

B. *Subsequent Evidence*

Plaintiff attached to her motion for judgment on the pleadings two series of reports that were acquired subsequent to the date the ALJ closed the hearing record. (Item # 9, Exhibits A & B). The first of these are records from Chemung County Equal Opportunity Job Development and chronicle plaintiff's more recent attempts at job placement, her success at acquiring a position at a child care center, and her loss of that job after she thought staff and parents were talking about her. (Item # 13, Exhibit A).

The second packet of subsequent evidence consists of additional treatment notes from Family Services of Chemung County, where Brown continued to undergo treatment. (Item # 9, Exhibit B). These notes demonstrate that during most visits Brown reported that she was doing well on her medical regime.

C. *Non–Medical Evidence*

Brown has a twelfth-grade education. (T. 106). She also attended vocational training at B.O.C.E.S. where she took clerical training. In addition, Brown studied computers at a vocational course at Elmira College. (*Id.*). Brown testified that she also attended an art institute in Pittsburgh for two years. (T. 35).

Prior to the hearing, plaintiff last worked in food service at Elmira College in 1993, a job she held for about nine months. Before that, Brown worked at a series of jobs including a bus aide, recreation director at a community center, secretary, and assembly worker. (T. 258–59). Brown held many of these jobs with help from community agencies such as Capabilities, Inc. (T. 334–35). For instance, Brown stated that her job as a transportation aide was through a sheltered workshop program. (T. 53).

Brown told the ALJ that she had problems on several of her jobs that resulted in her terminations. For instance, she described an incident at the Elmira college job in which her supervisor told her that if she were upset, she should leave for a while. (T. 38). When Brown failed to return for the rest of the day, the supervisor notified her that she was fired. (T. 38–39). Brown also stated that she had problems with other workers and was subjected to sexual harassment on that job. (*Id.*).

An employer terminated Brown from another job at the Ernie Davis Center, where Brown worked as an assistant working with children. That employer told her she failed to follow his instructions. (T. 39). She also testified that her uncle laid her off from a job as a waitress in his restaurant. (T. 40).

Brown told the ALJ that she spent most of the day at her mother's home. (T. 46–47). She said that although her mother babysits, Brown herself was not taking care of the children. (T. 59). Instead, she testified that she helped the children color, and took them for walks. (T. 46). Plaintiff testified that she cooked for herself, and cared for her own household, but needed her father's help in doing the laundry—he carried the basket for her. (*Id.*).

Brown also told the ALJ that although she went to bed at about eleven o'clock, she usually did not fall asleep until three o'clock in the morning. (T. 58). She said: "I hear voices. It's hard to sleep when this earlobe's talking and this earlobe's talking to you, you know?" (T. 58).

Brown tried to explain what was wrong with her and testified that "[l]ike I said, the most basic thing about me is my emotional troubles dealing with the schizophrenia. It seems like every job I get on, I just blow up, I—you know, my feelings are hurt very, very easily." (T. 59).

## DISCUSSION

### A. *The Standard of Review*

The issue to be determined by this Court is whether the ALJ's decision that plaintiff was not under a disability is supported by substantial evidence. *See* 42 U.S.C. § 405(g); *Rivera v. Sullivan*, 923 F.2d 964, 967 (2d Cir.1991). Substantial evidence is defined as "more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401, 91 S.Ct. 1420, 1427, 28 L.Ed.2d 842 (1971) (quoting *Consolidated Edison Co. v. National Labor Relations Bd.*, 305 U.S. 197, 229, 59 S.Ct. 206, 216–17, 83 L.Ed. 126 (1938)). Thus, the determination of the Commissioner is conclusive as long as it is supported by substantial evidence and is not based on legal error. *Arnone v. Bowen*, 882 F.2d 34, 37 (2d Cir.1989) (citations omitted).

### B. *The Standard for Finding a Disability*

A person is disabled when he or she is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). Such a disability will be found to exist only if an individual's "physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy....'" 42 U.S.C. § 423(d)(2)(A).

Plaintiff bears the initial burden of showing that her impairment prevents her from returning to her previous type of employment. *Berry v. Schweiker*, 675 F.2d 464, 467 (2d Cir.1982). Once this burden has been met, "the burden shifts to the [Commissioner] to prove the existence of alternative substantial gainful work which exists in the national economy and which the [plaintiff] could perform." *Id.; see also, Dumas v. Schweiker*, 712 F.2d 1545, 1551 (2d Cir.1983); *Parker v. Harris*, 626 F.2d 225, 231 (2d Cir.1980).

In order to determine whether plaintiff suffers from a disability, the ALJ employs a five-step inquiry: (1) whether the plaintiff is currently working; (2) whether the plaintiff suffers from a severe impairment; (3) whether the impairment is listed in Appendix 1 of the relevant regulations; (4) whether the impairment prevents the plaintiff from continuing her past relevant work; and (5) whether there is other work which the plaintiff could perform. 20 C.F.R. § 404.1520; *Berry*, 675 F.2d at 467. If a claimant is found to be either disabled or not disabled at any step in this sequential inquiry, the ALJ's review ends. 20 C.F.R. § 404.1520(a); *Musgrave v. Sullivan*, 966 F.2d 1371, 1374 (10th Cir.1992).

### C. *The Parties' Arguments and My Findings*

The Commissioner asserts that the ALJ's findings are supported by substantial evidence and must be upheld. Plaintiff disputes the ALJ's determination that she could still perform her previous jobs as a child-care

worker and a transportation aide. She also asserts that new and material evidence exists to support her application.

To reach the conclusion that Brown could still perform her past relevant work, the ALJ discounted reports of treating psychiatrist Manzano, who submitted at least four statements that Brown was incapable of working. A treating source's opinion of disability is entitled to some weight in claims for Social Security disability benefits. The Second Circuit Court of Appeals established its treating physician rule in a long series of cases, including *Schisler v. Bowen,* 851 F.2d 43, 47 (2d Cir.1988) (treating physician's opinion of disability binding unless contradicted by substantial evidence). However, the Commissioner promulgated new regulations in response to these holdings. Although these regulations altered the treating physician rule, the Second Circuit upheld the regulations' validity in *Schisler v. Sullivan,* 3 F.3d 563, 568–569 (2d Cir.1993). The present rule has been described in the following manner:

> Evaluation of physicians' testimony is governed by the "treating physician rule." As specified in 20 C.F.R. §§ 404.1527(d), 416.927(d), the rule provides that the treating physician's opinion as to the claimant's disability is controlling if it is well supported by medically acceptable clinical and laboratory diagnostic techniques, and is not inconsistent with the other substantial evidence in the record. Even if the treating physician's opinion is retrospective, it will be binding unless contradicted by other medical evidence or by "overwhelmingly compelling" non-medical evidence.

*Saviano v. Chater,* 956 F.Supp. 1061, 1069 (E.D.N.Y.1997) (citations omitted). In cases in which Social Security determines that a treating source opinion is *not* well-supported, the regulations require the ALJ to accord the physician's statements some extra weight based upon several factors. 20 C.F.R. § 404.1527(d)(2). The factors cited in the regulations include the length of the treatment relationship, the nature and extent of the relationship, the supportability of the source's opinion, the consistency with other medical evidence in the record, whether the opinion involves the speciality of the physi-

cian, and any other factors that might be relevant. *Id. See also, Gonzalez v. Callahan,* 1997 WL 279870 at *2 (S.D.N.Y.1997) (although Magistrate Judge erred by applying the Second Circuit's old treating physician's rule in conjunction with the regulations, in the context of the case, there was no significant difference between that rule and the current regulations he should have applied.).

Courts in the Second Circuit identified an additional consideration that was part of the treating physician rule:

> A corollary to the Second Circuit Court of Appeals' earlier treating physician rule was that the decision maker had a duty to seek clarification from a treating physician in the event the physician's report was somehow incomplete. Courts have continued to stress this duty even when a claimant is represented by counsel. Social Security Regulations place an affirmative duty on decision makers to seek clarification or elaboration from medical sources: 20 C.F.R. § 404.1512(e)(1) provides:

> "We will seek additional evidence or clarification from your medical source when the report from your medical source ... does not contain all the necessary information.... We may do this by requesting copies of your medical source's records, a new report, or a more detailed report from your medical source, including your treating source, or by telephoning your medical source."

*Geracitano v. Callahan,* 979 F.Supp. 952, (W.D.N.Y. 1997) *citations omitted.*

■ When these principles are applied to the case before the Court, the question arises whether Dr. Manzano's statements that plaintiff was incapable of working should be entitled to controlling weight or at least given extra weight. In his January 31, 1995 letter to plaintiff's attorney, Dr. Manzano based his statement of plaintiff's inability to work on Brown's almost five year history of treatment at Family Services, her previous admissions to the Elmira Psychiatric Center and her current therapy and medication. Yet in discrediting Dr. Manzano's opinion,

the ALJ referred back to the raw material of the treatment notes provided by Family Services. The ALJ noted discrepancies between the actual treatment that Brown received and the psychiatrist's statements of disability. The ALJ relied upon the fact that therapists checked the word "normal" on a standard evaluation form when Brown went for treatment sessions. He also pointed out that many of the treatment sessions lasted fifteen minutes or less, and finally, the ALJ noted that in addition to statements that Brown was disabled, one of Dr. Manzano's statements also referred Brown to New York State's Office of Vocational and Educational Services to Individuals with Disabilities (VESID). (T. 266). The ALJ felt this referral for employment services was inconsistent with allegations of total disability. Significantly, the ALJ did not suggest that medical evidence from any other treating source contradicted Dr. Manzano.

This is significant because Dr. Manzano prepared a final letter to the Appeals Council in support of Brown's claim for benefits after the ALJ issued his decision. As noted above, that letter refuted many of the ALJ's assumptions about the nature of the clinic notes. (T. 331–33). For instance, Dr. Manzano stated what the term "normal" means in the context of visits by a person suffering from schizophrenia to a psychiatric clinic. (T. 332). He also rejected the notion that short therapy sessions implied that Brown had relatively minor problems. (*Id.*). Instead, Dr. Manzano described reasons for the short visits—such as Brown's distrust of therapy. (*Id.*). Finally, Dr. Manzano's letter to the Appeals Council specifically noted that he referred Brown to VESID because *she* wanted to attend training. (T. 333).

■ As plaintiff correctly points out, an ALJ is not free to substitute his own lay opinion for opinions from treating sources. *Pietrunti v. Director, Office of Workers' Compensation Programs*, 119 F.3d 1035, 1042 (2d Cir.1997), ("Moreover, an ALJ 'cannot arbitrarily substitute his own judgment for competent medical evidence,'" *quoting*

*McBrayer v. Sec. of H.H.S.*, 712 F.2d 795, 799 (2d Cir.1983)). The ALJ's decision, and Dr. Manzano's subsequent letter demonstrate the reason why. Had the ALJ sought additional medical information as required under the treating physician rule, it is possible that the case would not be before me today. Instead of guessing what the clinic notes meant, the ALJ might have sought additional information from Family Services, or he might have sought input at the hearing from a medical advisor.

As Dr. Manzano's subsequent letter to the Appeals Council demonstrates, many of the ALJ's interpretations were incorrect. It is difficult to determine why the Appeals Council refused to review the ALJ's decision after receiving Dr. Manzano's explanations. Because they did not review the ALJ's decision, this Court is left to guess how the Commissioner would have ruled had Dr. Manzano's information been before him, and why Dr. Manzano's opinion was still not accorded additional weight either at the ALJ or Appeals Council level. As it stands, the Commissioner's final determination is unsupported by substantial evidence.

■ Brown, however, is not entitled to reversal of the Commissioner's decision based upon the record before me. The evidence shows that Brown suffers from a severe mental impairment of long-duration. Social Security's regulations themselves recognize the long-term, but variable nature of some mental disorders:

An individual's level of functioning may vary considerably over time. The level of functioning at a specific time may seem relatively adequate or, conversely, rather poor. Proper evaluation of the impairment must take any variations in level of functioning into account in arriving at a determination of impairment severity over time. Thus, it is vital to obtain evidence from relevant sources over a sufficiently long period prior to the date of adjudication in order to establish the individual's impairment severity. This evidence should include treatment notes, hospital discharge

summaries, and work evaluation or rehabilitation progress notes if these are available.

Some individuals may have attempted to work or may actually have worked during the period of time pertinent to the determination of disability. This may have been an independent attempt at work, or it may have been in conjunction with a community mental health or other sheltered program which may have been of either short or long duration. Information concerning the individual's behavior during any attempt to work and the circumstances surrounding termination of the work effort are particularly useful in determining the individual's ability or inability to function in a work setting.

20 C.F.R. Pt. 404, Subpt. P, Appendix 1, § 12.00(D).

Here the plaintiff presented an ambiguous picture. Despite her impairment, Brown was capable of maintaining employment for fairly long periods of time, with at least one job— as a bus aide—lasting almost two years, and another—recreation director—lasting over nine months. (T. 96). Indeed, the proposed "new and material" evidence plaintiff has submitted indicates that recently she worked for several months at a day-care center. (Item # 9, Ex. A). This last job is exactly the type of position that the ALJ found appropriate for plaintiff. (T. 18). Yet Dr. Manzano's letters recognize that stress from employment may be just what causes acute episodes of Brown's illness.

Plaintiff carries a diagnosis of chronic schizophrenia, which has been described as "a serious mental disorder characterized by loss of contact with reality (psychosis), hallucinations, delusions (false beliefs), and abnormal thinking, and *disrupted work and social functioning.*" Merck Manual of Medical Information, Home Edition, 435 (Robert Berkow, M.D. ed., 1997), (emphasis added). Social Security's listed impairments address the type of chronic schizophrenia alleged by Brown. Part of the Commissioner's listing for schizophrenia requires:

Medically documented history of one or more episodes of acute symptoms, signs and functional limitations which at the time met the requirements in A and B of this listing, although these symptoms or signs are currently attenuated by medication or psychosocial support, and one of the following:

1. Repeated episodes of deterioration or decompensation in situations which cause the individual to withdraw from that situation or to experience exacerbation of signs or symptoms (which may include deterioration of adaptive behaviors); or

2. Documented current history of two or more years of inability to function outside of a highly supportive living situation.

20 C.F.R. Part 4, Subpt. P, App. 1, § 12.03(C).[5]

---

**5.** *Schizophrenic, Paranoid and Other Psychotic Disorders:* Characterized by the onset of psychotic features with deterioration from a previous level of functioning.

The required level of severity for these disorders is met when the requirements in both A and B are satisfied, or when the requirements in C are satisfied.
A. Medically documented persistence, either continuous or intermittent, of one or more of the following:
1 Delusions or hallucinations; or
2. Catatonic or other grossly disorganized behavior; or
3. Incoherence, loosening of associations, illogical thinking, or poverty of content of speech if associated with one of the following:
a. Blunt affect; or
b. Flat affect; or
c. Inappropriate affect;

or
4. Emotional withdrawal and/or isolation;
AND
B. Resulting in at least two of the following:
1. Marked restriction of activities of daily living; or
2. Marked difficulties in maintaining social functioning; or
3. Deficiencies of concentration, persistence or pace resulting in frequent failure to complete tasks in a timely manner (in work settings or elsewhere); or
4. Repeated episodes of deterioration or decompensation in work or work-like settings which cause the individual to withdraw from that situation or to experience exacerbation of signs and symptoms (which may include deterioration of adaptive behaviors);
20 C.F.R. Part 4, Subpt. P, App. 1, § 12.03(A) & (B).

Thus Social Security's regulations would allow a finding of disability in a case like Brown's, in which the schizophrenia at times has been attenuated and has been characterized as "in remission". (T. 141).

## CONCLUSION

The Commissioner's final decision that Brown could still perform her past relevant work and therefore was not disabled was not supported by substantial evidence and is reversed. Defendant's motion for judgment on the pleadings is **DENIED**.

Plaintiff's motion for judgment on the pleadings is **GRANTED** in part, to the extent that the case is remanded, pursuant to sentence four of 42 U.S.C. § 405(g), for further proceedings consistent with this decision. Upon remand, the Commissioner shall undertake an evaluation of the February 16, 1996 letter that Brown's treating psychiatrist submitted to the Appeals Council. The Administrative Law Judge should consider what weight to assign to Dr. Manzano's opinion as to Brown's disability and whether the plaintiff's condition is at least as severe as the listed impairment cited above, 12.03(C). The ALJ should also consider any new evidence that plaintiff can provide, including the evidence attached to her pleadings.

IT IS SO ORDERED.