Alfred GONZALEZ, Plaintiff,

v.

Kenneth S. APFEL, Commissioner of
Social Security Administration,
Defendant.

No. 92 Civ. 7997 (JES).

United States District Court,
S.D. New York.

Aug. 25, 1999.

Bronx Legal Services, Bronx, NY, Guilene Cherenfant Edouard, of counsel, for plaintiff.

Mary Jo White, United States Attorney for the Southern District of New York, New York City, Lorraine S. Novinski, Assistant United States Attorney, of counsel, for defendant.

## MEMORANDUM OPINION
## AND ORDER

SPRIZZO, District Judge.

Pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3), plaintiff Alfred Gonzalez ("Gonzalez") brings this action challenging the final determination of defendant Commissioner of the Social Security Administration ("Commissioner") that he was not disabled prior to June 1, 1989, and thus not entitled to Supplemental Security Income ("SSI") disability benefits at any time prior to that date. Pursuant to Rule 12(c), Fed. R.Civ.P., the parties bring cross-motions for judgment on the pleadings. For the reasons set forth below, plaintiff's motion is denied, and defendant's cross-motion is granted.

### BACKGROUND

Gonzalez was born in New York City on January 7, 1952. *See* Transcript of the Administrative Record ("Tr.") at 38. He did not complete the tenth grade but did attend college, earning 22 college credits. *See id.* at 39, 106. Sometime prior to 1968, Gonzalez spent two years working as a salesman in a record store, and from 1968 to 1977 he worked as a busboy in various Manhattan restaurants. *See id.* at 40. In 1977, at age 25, Gonzalez decided to stop working, stating that he was "working himself to death," *id.* at 41, and had no time to spend his money. *See id.* at 42. Since that time, he has worked only occasionally and for limited periods performing various unskilled jobs. *See id.* at 249–50.

Also in 1977, Gonzalez was sentenced to eight days in prison after pleading guilty to a charge of burglary. *See id.* at 45. Gonzalez testified as a result of the treatment he received while incarcerated, he suffered a nervous breakdown in 1978 and has been mentally ill ever since. *See id.* at 142, 228–230. In addition to this mental impairment, which Gonzalez claims interfered with his ability to perform certain basic work-related functions, he also alleges back pain as part of his disability related to a motor vehicle accident in the late 1970's. Although the record indicates that Gonzalez has a history of drug use and alcoholism, Gonzalez testified that he has not used drugs since 1979 and that he has not abused alcohol since he was "detoxed" in March 1988. *See id.* at 48–49, 122–33.

From 1981 to 1983 Gonzalez lived with his parents in Puerto Rico. *See id.* at 164, 246. On December 13, 1984, upon returning to the continental United States, he entered a voluntary substance abuse program, where he remained for approximately eighteen months. *See id.* at 55. Thereafter, Gonzalez spent time living on the streets and eventually entered the Francis Shelter in 1985. *See id.* at 55, 56. After about two and one half years in the shelter, Gonzalez was banned from returning and then began living in a studio apartment by himself. *See id.* Since 1994, however, he has again been homeless and living on the streets. *See id.* at 221.

### Gonzalez's Applications for SSI Benefits

Gonzalez submitted applications for SSI benefits based on disability on May 21, 1980, June 2, 1983, July 29, 1985, and March 11, 1989, each of which was denied. *See* Tr. at 21. A fifth application, filed on June 7, 1989 was granted, finding that Gonzalez was disabled as of June 1, 1989. *See id.* at 17, 37. Subsequently, the May 1980 application was reopened pursuant to the decision in *City of New York v. Heckler,* 578 F.Supp. 1109 (E.D.N.Y.), *aff'd,* 742 F.2d 729 (2d Cir.1984), *aff'd sub. nom. Bowen v. City of New York,* 476 U.S. 467, 106 S.Ct. 2022, 90 L.Ed.2d 462 (1986), which directed the Social Security Administration ("SSA") to reopen claims filed between 1980 and 1983 by individuals claiming mental impairments. *See id.* at 34. A hearing was held before an administrative law judge ("ALJ") on April 26, 1991, at which Gonzalez was represented by counsel, to determine whether Gonzalez was eligible for benefits for the period from 1980 to 1989. *See id.*

On September 16, 1991, the ALJ issued a written decision based on the medical

reports submitted by Gonzalez's independent doctors, the SSA's consulting doctors, the testimony of Gonzalez's mother, Gonzalez's own testimony, and records pertaining to his drug and alcohol treatment, finding that Gonzalez had not been disabled prior to June 1, 1989. *See id.* at 17–22 (Dept. of Health and Human Serv. Soc. Sec. Admin. Office of Hearings and Appeals Decision, dated September 16, 1991).[1] Gonzalez claimed to be disabled as a result of both his alleged mental illness and injuries allegedly sustained in a motor vehicle accident. The ALJ noted that the record contained no documentation relating to the motor vehicle accident and several physical examinations revealed no musculoskeletal or neurological damage. *See id.* at 18. Further, the ALJ found it noteworthy that there was no record of Gonzalez receiving any regular or ongoing treatment in connection with his alleged back pain from the accident. *See id.* As for Gonzalez's claim of mental illness, the ALJ also stated that although Gonzalez suffered one psychotic episode in 1978, he had maintained only sporadic contact with mental health facilities since then, and the record included no indication that Gonzalez was ever totally disabled. *See id.* Moreover, although the psychiatrist who examined Gonzalez in 1991 concluded that Gonzalez had been mentally disabled since 1978, the ALJ concluded that the psychiatrist's retrospective opinion was not supported by other substantial evidence in the record. *See id.*

The ALJ thus held that the evidence supported a finding (1) that Gonzalez did not suffer from an impairment or combination of impairments listed in, or medically equal to, an impairment contained in Appendix 1, Subpart P, Regulations No. 4, *id.* at 20; (2) that from 1978 to May 31, 1989, Gonzalez had the residual functional capacity[2] to perform work-related activities except for work that involved comprehending and following complex and technical job instructions, *id.;* and thus (3) that Gonzalez's impairments did not prevent him from performing his past relevant work as a busboy prior to June 1, 1989, *id.* at 21. Therefore, the ALJ concluded that Gonzalez was not disabled as defined by the Social Security Act prior to June 1, 1989. *See id.*

On September 1, 1992, the ALJ's decision became final when the Appeals Council denied Gonzalez's request for review of the decision. *See* Tr. at 2–3 (Letter from David C. Harty, Admin. Appeals Judge, Soc. Sec. Admin., to Alfred Gonzalez, dated September 1, 1992). Gonzalez then commenced this action seeking a review of the Appeals Council's denial on October 31, 1992. By Order dated February 1, 1994, this Court remanded the case for the purpose of obtaining additional medical evidence for the years 1978 through 1980. *See id.* at 205.

On April 13, 1994, the Appeals Council ordered that the final decision of the Commissioner be vacated and remanded to the ALJ for further proceedings consistent with the Court's Order. *See id.* at 203 (Letter from W. Taylor, Admin. Appeals Judge, Soc. Sec. Admin., to Alfred Gonzalez, dated April 13, 1993). On remand, the ALJ attempted to obtain additional records of Gonzalez's treatment for mental illness and any other medical records. *See id.* at 180. Despite repeated attempts, no such additional records could be obtained, the records having apparently been lost or destroyed. *See id.* at 180. A second hearing was held before the ALJ on September 8, 1994 at which Gonzalez was again represented by counsel. *See id.* at 218–52. In a March 21, 1995 decision, the ALJ stated

---

1. The Social Security Act defines a "disability" as the inability to engage in substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which can be expected to last for a continuous period of not less than 12 months. 42 U.S.C. § 423(d)(1)(A) (1994).

2. "[R]esidual functional capacity is what you can do despite your limitations." 20 C.F.R. § 416.945(a) (1999).

that no new medical evidence had been obtained, and he therefore readopted his earlier finding that Gonzalez was not disabled prior to June 1989. *See id.* at 172–81 (Dept. of Health and Human Serv. Soc. Sec. Admin. Office of Hearings and Appeals Decision, dated March 21, 1995). Gonzalez attempted to appeal the ALJ's decision, but a letter dated September 23, 1995, the Appeals Council concluded that there was no basis for the Appeals Council to assume jurisdiction. *See id.* at 168–69 (Letter from Gabriel E. DePass, Admin. Appeals Judge, Soc. Sec. Admin., to Alfred Gonzalez, dated September 23, 1995). In response, Gonzalez sought further review of the Commissioner's decision by this Court.

**The Available Medical Evidence**

As noted above, evaluation of Gonzalez's claim was complicated by the lack of medical evidence to substantiate his claimed mental illness. Certain limited records, however, were considered by the ALJ. Between 1978 and June 24, 1980, Gonzalez was treated on a weekly basis at the Lincoln Hospital Substance Abuse Division for his nervous breakdown in 1978 and his drug and alcohol addiction. *See* Tr. at 110. In a June 24, 1980, report, Dr. Michael Smith, the medical director of the program, characterized Gonzalez's attitude as good, his appearance as appropriate, and his behavior as cooperative; Gonzalez's speech and thought organization and content were described as good with no schizophrenic symptoms; his mood and affect were hypomanic; his insight and judgment were fair; his personal habits were good; his manner of relating to others was self-conscious and tense. *See id.* at 110–13. Dr. Smith further noted that most of the limitations Gonzalez had as a result of his impairment were mild or moderate. *See id.* at 112. Gonzalez also apparently received treatment for his 1978 breakdown at the Morrisania Neighborhood Family Health Care Center ("NFHCC") Mental Health Annex. *See id.* at 166. However, the ALJ was unable to obtain any medical records from Morrisania regarding Gonzalez's treatment or condition during that time.

On June 18, 1983, Gonzalez was examined by a consulting psychiatrist for the SSA, Dr. Daniel Kelleher. *See id.* at 114–15. Dr. Kelleher's report concluded that Gonzalez had no psychological limitations in personal, social, or occupational adjustment and that he did not appear to need any psychiatric help. *See id.* at 15. Thereafter, on December 12, 1984, Gonzalez began treatment for substance abuse at Project Return. *See id.* at 120. A report from the program dated December 13, 1984, identified Gonzalez's major problem as chronic drug abuse and stated that he was not psychotic. *See id.* at 117–20. Furthermore, no restrictions were noted in his performance of daily activities or in his ability to maintain interests and personal habits or to relate to others. *See id.* Similarly, there were no findings of any physical abnormalities. *See id.*

After leaving Project Return, Gonzalez lived at the Franklin Avenue Men's Shelter, and from July 9, 1986 to January 20, 1988, he was treated for substance abuse at the Morrisania NFHCC, through their Community Support Systems Program ("CSS"). *See id.* at 8–10, 166. A report from Gonzalez's therapist, Jose Torres, on June 23, 1992, stated that Gonzalez's main complaints were paranoid ideation, hyper-irritability, feelings of persecution and auditory hallucinations. *See id.* at 8. However, when asked to access the extent of Gonzalez's limitations in twelve areas of personal habits and activities, social functions and work-related behaviors, Mr. Torres characterized Gonzalez as moderately limited in six areas and markedly limited in six areas. *See id.* at 8–9. Furthermore, although Mr. Torres reported that Gonzalez was in an acute psychotic state when he entered the program, and that his symptoms subsequently went into remission, he was unable to determine to what extent alcohol or substance abuse contributed to Gonzalez's psychotic symptoms. *See id.* at

10. Following his time at CSS, Gonzalez was admitted to the Bronx Lebanon Hospital for voluntary detoxification on March 2, 1988. *See id.* at 122–33. The records compiled there contain no reference to any psychological problems. *See id.*

The remaining medical evidence is the result of examinations that took place after the date Gonzalez has been found to be disabled—June 1, 1989. *See* Tr. at 137–49. On July 15, 1989, Gonzalez underwent an examination by consulting physicians Drs. Rocker and King. *See id.* at 137–41. Dr. Rocker noted that Gonzalez had a history of psychiatric dysfunction and drug abuse and that, although Gonzalez complained of low back pain, there was no objective musculoskeletal impairment. *See id.* at 138. Dr. King diagnosed Gonzalez as having chronic paranoid schizophrenia and recommended that Gonzalez pursue an outpatient treatment program. *See id.* at 141.

From April 22 to May 16, 1991, Gonzalez underwent a comprehensive psychological evaluation at St. Marks's Place Institute for Mental Health. *See id.* at 142. Drs. Malinowska and Pabis evaluated Gonzalez's psychiatric and psychological profile by conducting a psychiatric interview, a mental status examination, an intelligence test, and a battery of neurophysiological tests. *See id.* at 142–148. On the basis of their examination, Gonzalez was diagnosed with chronic schizophrenia, residual type, and substance abuse. *See id.* Further, although the psychologists evaluated no data regarding Gonzalez's condition from 1978 through 1991, they provided a retrospective opinion suggesting that Gonzalez's schizophrenia began at age 26 in 1978 and that he has been psychologically unable to work since that time. *See id.* at 149.

The record also contains an affidavit from Edith Gonzalez, Gonzalez's mother, dated July 25, 1991. *See id.* at 150. Mrs. Gonzalez stated that her son's problems started in 1978 and that from 1978 to 1980 he was unable to leave the home alone and locked himself in his room. *See id.* She further stated that the problems her son exhibited in 1978, including depression and hallucinations, have persisted to this day. *See id.*

### DISCUSSION

■ Pursuant to 42 U.S.C. § 405(g), a claimant may obtain judicial review of a final agency ruling on SSI disability benefits by filing a civil action in a district court. *See* 42 U.S.C. § 405(g) (1994). Since the Commissioner is responsible for making the ultimate determination whether a claimant meets the statutory definition of disability, *see* 20 C.F.R. § 404.1527(e)(1) (1999), the reviewing court does not review *de novo* the evidence in the record. *See Jones v. Sullivan,* 949 F.2d 57, 59 (2d Cir.1991). Rather, an applicant seeking to overturn a final agency decision denying disability benefits must establish either that the Commissioner committed legal error or that the decision is not supported by substantial evidence in the record. *See Arnone v. Bowen,* 882 F.2d 34, 37 (2d Cir.1989); *Johnson v. Bowen,* 817 F.2d 983, 985 (2d Cir.1987); *Mimms v. Heckler,* 750 F.2d 180, 185 (2d Cir.1984); *Mongeur v. Heckler,* 722 F.2d 1033, 1038 (2d Cir.1983).

In order to qualify for SSI disability benefits, a claimant must demonstrate that he is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. § 423(d)(1); 20 C.F.R. § 404.1527; *see also Bowen v. City of New York,* 476 U.S. 467, 470, 106 S.Ct. 2022, 90 L.Ed.2d 462 (1986); *White v. Secretary of HHS,* 910 F.2d 64, 65 (2d Cir.1990); *Berry v. Schweiker,* 675 F.2d 464, 467 (2d Cir.1982); *Aubeuf v. Schweiker,* 649 F.2d 107, 111 (2d Cir.1981); *Parker v. Harris,* 626 F.2d 225, 230–31 (2d Cir.1980). The Second Circuit has summarized the Commissioner's five-step evaluation process for evaluating disability claims as follows:

First, the [Commissioner] considers whether the claimant is currently engaged in substantial gainful activity. If he is not, the [Commissioner] next considers whether the claimant has a "severe impairment" which significantly limits his physical or mental ability to do basic work activities. If the claimant suffers such an impairment, the third inquiry is whether, based solely on medical evidence, the claimant has an impairment which is listed in Appendix 1 of the regulations. If the claimant has such an impairment, the [Commissioner] will consider him disabled without considering vocational factors such as age, education, and work experience; the [Commissioner] presumes that a claimant who is afflicted with a "listed" impairment is unable to perform substantial gainful activity. Assuming the claimant does not have a listed impairment, the fourth inquiry is whether, despite the claimant's severe impairment, he has the residual functional capacity to preform his past work. Finally, if the claimant is unable to perform his past work, the [Commissioner] then determines whether there is other work which the claimant could perform.

*Berry,* 675 F.2d at 467. The claimant bears the burden of proof as to the first four steps of the evaluation process. *See id.* If the claimant establishes that his severe impairment precludes his return to his previous occupation, the burden shifts to the Commissioner to demonstrate that the claimant retains the functional capacity to perform alternative gainful work which exists in the national economy. *See e.g., White,* 910 F.2d at 65; *Parker,* 626 F.2d at 231.

Pursuant to SSA regulations, the Commissioner must evaluate every medical opinion received, regardless of its source. *See* 20 C.F.R. § 404.1527(d); *see also Schisler v. Sullivan,* 3 F.3d 563, 567 (2d Cir.1993); *Brown v. Apfel,* 991 F.Supp. 166, 171 (W.D.N.Y.1998). Evaluation of medical evidence is governed by the "treating physical rule," which states that the treating physician's opinion as to the claimant's disability, even if retrospective, is controlling if it is well-supported by medically acceptable techniques and is not inconsistent with substantial evidence in the record. *See id.* In addition, the Commissioner will consider a claimants statements regarding pain and other symptoms, but these factors alone will not establish disability. *See* 20 C.F.R. § 404.1529(a). There must exist medical and clinical findings that support the conclusion that the claimant suffers from a medical impairment which could "reasonably be expected to produce the pain or other symptoms alleged and which, when considered with all other evidence ... would lead to the conclusion that [the claimant is] disabled." *See id.*

Gonzalez first argues that the Commissioner incorrectly denied his request for disability benefits because the lack of contemporaneous medical records from Gonzalez's treating physicians is attributable solely to the SSA's failure to develop and maintain adequate medical records after he filed his first claim for benefits in 1980. Had the SSA sufficiently investigated his first application in 1980, Gonzalez claims, the SSA would have found ample medical records that were subsequently lost or destroyed by the treating hospitals. Thus, Gonzalez argues, this Court should assume that the missing records would support his disability claim because the loss of the documents is attributable to the Commissioner's delay in seeking his medical files.

Although the Commissioner is required to make all reasonable efforts to obtain evidence from a claimant's treating sources to develop a complete medical history for the claimant, *see* 42 U.S.C. § 423(d)(5); 20 C.F.R. § 916.912(d); *see also Pratts v. Chater,* 94 F.3d 34, 37 (2d Cir.1996); *Schisler v. Bowen,* 851 F.2d 43, 46 (2d Cir.1988), the Court finds that the Commissioner has now complied fully with this obligation. Because the record previously

did not indicate full compliance with this requirement with respect to the treatment Gonzalez received at the Morrisania NFHCC Mental Health Annex between 1978 and 1980, this Court, upon the Commissioner's motion, remanded the case in 1994 for further fact finding. *See* Tr. at 205. On remand, the ALJ unsuccessfully attempted to obtain the relevant records from Morrisania and from other clinics where plaintiff claims to have received treatment, and it appears that the records are no longer available. *See id.* at 178.

Although Gonzalez is correct that the SSA did not adequately review his initial 1980 application, the ALJ in this case did upon remand undertake a thorough search for any relevant medical records. Gonzalez's claim that an earlier search would have produced additional medical records sufficient to demonstrate his disability is speculative at best, as there is no evidence in the record as to what medical files once existed and when these files were lost or destroyed.[3] Gonzalez has presented no precedent that would require this Court to award benefits solely upon the basis of the Commissioner's past failure to develop the medical record where the Commissioner has subsequently undertaken an exhaustive effort to remedy the past error and carefully considered all available medical evidence.

■ Gonzalez further contends that, even based on the available medical evidence, the Commissioner's denial of benefits was not supported by substantial evidence. The Supreme Court has defined "substantial evidence" as " 'more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.' " *Richardson v. Perales,* 402 U.S. 389, 401, 91 S.Ct. 1420, 28 L.Ed.2d 842 (1971) (quoting *Consolidated Edison Co. v. N.L.R.B.,* 305 U.S. 197, 229, 59 S.Ct. 206, 83 L.Ed.

126 (1938)). The findings of the Commissioner as to any fact, if supported by substantial evidence, are conclusive. *See* 42 U.S.C. § 405(g); *Richardson,* 402 U.S. at 401, 91 S.Ct. 1420; *Alston v. Sullivan,* 904 F.2d 122, 126 (2d Cir.1990); *Rutherford v. Schweiker,* 685 F.2d 60, 62 (2d Cir.1982); *Schauer v. Schweiker,* 675 F.2d 55, 57 (2d Cir.1982); *Rivera v. Harris,* 623 F.2d 212, 216 (2d Cir.1980); *Gernavage v. Shalala,* 882 F.Supp. 1413, 1416 (S.D.N.Y.1995). The Second Circuit has squarely held that where a district court finds that there is substantial evidence supporting the Commissioner's decision, that decision must be upheld, even if there exists substantial evidence to support the plaintiff's position. *See Alston,* 904 F.2d at 126; *accord Schauer,* 675 F.2d at 57. Finally, while the ALJ must set forth with sufficient specificity the facts essential to his decision so that the reviewing court may decide whether the ALJ's determination is supported by substantial evidence, *see White,* 910 F.2d at 65; *Ferraris v. Heckler,* 728 F.2d 582, 586 (2d Cir.1984), he need not "explicitly reconcile every conflicting shred of medical testimony." *Mongeur,* 722 F.2d at 1040.

■ Here, the administrative record before the Court clearly supports the Commissioner's argument that substantial evidence supports the finding that the Gonzalez was not disabled prior to June 1, 1989. The ALJ issued a well-reasoned decision reflecting a detailed evaluation of Gonzalez's independent and consultative physicians' diagnoses and medical opinions, reports from substance abuse programs, Gonzalez's own testimony concerning his physical and mental condition, and that of his mother, as well as regulatory vocational factors. *See* Tr. at 17–22; *see also Mongeur,* 722 F.2d at 1037; *Miles v. Harris,* 645 F.2d 122, 124 (2d Cir.1981); *Parker,* 626 F.2d at 231.

---

**3.** Although the record contains a letter from the program director indicating that Gonzalez received treatment at Morrisania between 1978 and 1980, there is no indication as to

the what sort of treatment he received, nor any mention of his condition at the time of such treatment. *See* Tr. at 160.

**31**

First, the ALJ discussed his reasons for discrediting Gonzalez's claim that his back pain was a serious physical impairment that significantly limited his exertional capacity. *See id.* at 18. The ALJ properly attributed significance to the lack of medical documentation pertaining to the alleged automobile accident, the medical examination by Dr. Rocker that failed to find any musculoskeletal or neurological deficits, and the absence in the record of any mention of regular or ongoing treatment in connection with Gonzalez's alleged back pain. *See Arnone,* 882 F.2d at 39. Thus, the Court finds that the ALJ's conclusion that Gonzalez had no serious physical impairment is supported by substantial evidence in the record.

The ALJ was similarly justified in concluding that the record did not allow for a finding that Gonzalez was so mentally impaired as to be totally disabled prior to June 1, 1989. *See* Tr. at 21. The ALJ gave the appropriate weight to the fact that the record contains the mention of only one psychotic episode in 1978 and that Gonzalez thereafter maintained only sporadic contact with mental health facilities and did not require regular psychiatric treatment. *See* Tr. at 17–22; *Arnone,* 882 F.2d at 39. The ALJ determined that all the contemporaneous medical evidence obtained from officials at the substance abuse programs Gonzalez attended, as well as from the SSA's consulting physicians, gave no indication that Gonzalez was ever totally disabled as the result of his psychiatric condition. The only experts making such an assertion were Drs. Malinowska and Pabis, who examined Gonzalez in 1991. *See id.* at 20. The ALJ gave due consideration to these reports but reasonably concluded that these retrospective opinions were contradicted by substantial evidence in the record and thus did not afford sufficient basis for a finding that Gonzalez was disabled. *See Schisler,* 3 F.3d at 567; *Mongeur,* 722 F.2d at 1037; *Brown,* 991 F.Supp. at 171.

Thus, substantial evidence justified the ALJ's conclusion that Gonzalez was not totally mentally disabled prior to June 1, 1989, and that he retained the residual functional capacity to perform his past relevant work.

## CONCLUSION

For the reasons set forth above, the Court denies Gonzalez's motion for judgment on the pleadings and grants the Commissioner's cross-motion for judgment on the pleadings. The Clerk of Court is directed to enter Judgment accordingly and to close this action.

It is **SO ORDERED.**