**Nicolo ARNONE, Plaintiff–Appellant,**

v.

**Otis R. BOWEN, Secretary of Health and Human Services, Defendant–Appellee.**

**No. 1061, Docket 88–6192.**

United States Court of Appeals, Second Circuit.

Argued April 25, 1989.
Decided Aug. 4, 1989.

Max D. Leifer, Astoria, N.Y. (Ira H. Zuckerman, Astoria, N.Y., of counsel), for plaintiff-appellant.

Andrew J. Maloney, U.S. Atty. for the Eastern District of New York, Robert L. Begleiter, August V. Sellitto, Asst. U.S. Attys., Eastern District of New York, Brooklyn, N.Y., for defendant-appellee.

Before OAKES, Chief Judge,
WISDOM * and MESKILL, Circuit
Judges.

MESKILL, Circuit Judge:

This is an appeal from a judgment of the United States District Court for the Eastern District of New York, Platt, C.J. The district court affirmed a decision of the defendant-appellee Secretary of Health and Human Services (the Secretary) denying plaintiff-appellant Nicolo Arnone's application for disability insurance benefits. Arnone appeals. We affirm.

## BACKGROUND

Plaintiff-appellant Nicolo Arnone was born in Italy in 1929. He worked in Italy as an ice cream vendor until he came to the United States in 1968. Once here, he worked as a porter in a meat packing plant. This work involved cleaning meat cutting tables, using an electric saw, lifting items weighing up to seventy pounds and using a hose to clean floors and equipment. In November 1973, Arnone injured his back at work while lifting a heavy object, resulting in lower back and leg pain.

Arnone sought treatment from Dr. Harold Goldberg who apparently saw Arnone regularly for a number of weeks. Dr. Goldberg referred Arnone to Dr. Irving Liebman, and Dr. Liebman examined Arnone on December 6, 1973. Dr. Liebman stated his opinion that "the patient as a result of his accident sustained a herniated lumbar disc. At the present time he is totally disabled." The doctor recommended hospitalization for bed rest and traction, and "[s]hould he fail to improve, a myelogram is indicated."

On January 15, 1974, Dr. Francis B. Roth examined Arnone and concluded that Arnone "has a severe low back derangement and possibly a herniated disc." Roth stated that Arnone was "presently disabled."

Arnone initially rejected recommendations of an operation. As a result of continuing back and leg pain, however, he was hospitalized for six weeks beginning March 1, 1974. On April 1, Arnone underwent a lumbar laminectomy performed by Dr. Ralph A. Olson. A herniated lumbar disc on the left side of L4–L5 and numerous degenerated fragments were removed. Dr. Liebman then performed a lateral fusion.

Following his operation, Arnone continued to complain of lower back pain and numbness in his legs, particularly his left leg. He claimed that his condition did not improve at all after the operation, and perhaps even worsened. During 1974–75 and perhaps into mid–1976, he was examined by several doctors. Dr. John J. Lalli examined Arnone on December 27, 1974 and reported "[p]ost lumbar disc surgery syndrome. Patient has a moderate partial disability and further treatment is indicated." On January 2, 1975, Dr. Olson saw Arnone for the first time since his discharge from the hospital. He reported finding diminished sensation and reflexes in the left leg, "probably secondary to his previous disc and/or surgery." Dr. Olson recommended that Arnone lose some weight and continue physiotherapy. He repeated these recommendations after an-

---

* Honorable John Minor Wisdom, United States Circuit Judge for the Fifth Circuit, sitting by designation.

other examination on January 27. Dr. Seth F. Abramson examined Arnone on January 20 and diagnosed a "partial disability." Dr. C. Volpe examined Arnone on October 8, 1975 and noted Arnone's complaints of pain and numbness in his left leg. Dr. Volpe's report included the notation "permanent partial disability."

Between 1976–81, Arnone received no medical treatment for his ailments. Nevertheless, he maintains that throughout this period he was unable to work due to his back problems and pain and numbness in his legs.

On January 19, 1981, Arnone applied for disability insurance benefits pursuant to Title II of the Social Security Act, 42 U.S.C. §§ 401–33 (1982 & Supp. IV 1986). His application stated that his disability was a "slipped disc—replaced by artificial one," and that he had become unable to work due to this disability as of November 16, 1973.

Following his application for benefits, Arnone again visited a number of doctors. Dr. S.K. Dutta, examining Arnone on February 26, 1981, diagnosed post-herniated disc removal and degenerative joint disease of the lumbosacral spine. He added, "[i]n terms of functional capacity of this patient to work, he should be able to walk 3–4 blocks; sit for 2 hours; stand for 1 hour and capable of lifting 10–15 lbs. He has slight difficulty bending."

Dr. Nathaniel Shaffer, after examining Arnone in March 1982, diagnosed "[s]tatus post lumbar spine surgery with herniated intervertebral lumbar disc and osteoarthritis," and concluded that Arnone was "totally disabled." The record also includes post-examination reports of Drs. O. Fukilman and A.P. Tambakis, both dated January 17, 1984.

Arnone's application was denied initially and on reconsideration. Arnone requested a hearing before an Administrative Law Judge (ALJ), which was held on August 29, 1984 and September 5, 1984. On December 12, 1984, the ALJ found that Arnone was not entitled to disability insurance benefits. On March 14, 1985, the Appeals Council rejected Arnone's request to review the decision of the ALJ.

Arnone then brought an action pursuant to 42 U.S.C. § 405(g) in the United States District Court for the Eastern District of New York, seeking review of the Secretary's decision. In a Memorandum and Order dated January 27, 1987, Chief Judge Platt remanded the case to the Secretary for further proceedings, stating "this Court questions whether the Secretary's findings are supported by substantial evidence in that the ALJ did not specify with sufficient particularity the evidence to support his conclusions."

On February 27, 1987, the Appeals Council vacated its denial of Arnone's request for review and the decision of the ALJ and remanded the case to an ALJ for further proceedings. The ALJ held hearings, and Arnone subsequently supplemented the record with a letter dated June 18, 1987 from Dr. Liebman. Dr. Liebman recounted his diagnosis and treatment in 1973–74 and reported a new examination of Arnone. Accompanying the letter were the results of a CT scan. Dr. Liebman stated

[i]t is my opinion that the patient has been totally disabled from work from 11/16/73 to the present time, secondary to a herniated lumbar disc at L4–L5 with a subsequent development of advanced degenerative disc disease and osteoarthritic degeneration of the L4–L5 interspace. This disability has been continuous and total in nature.

The ALJ issued a recommended decision on September 24, 1987. The ALJ recommended

the claimant is entitled to a period of disability from January 4, 1974 through June 30, 1976 but is not entitled to a period of disability or disability insurance benefits under sections 216(i) and 223, respectively, of the Social Security Act at any time prior thereto or subsequent to that time.

By letter to the Appeals Council dated September 30, 1987, counsel for Arnone took exception to the ALJ's recommendation. Relying heavily on the June 1987 report of Dr. Liebman, he maintained that Arnone was entitled to a continuous period

of disability since November 16, 1973, as his condition had not improved since that time.

In a decision dated February 17, 1988, the Appeals Council modified the recommended decision of the ALJ. The Appeals Council accepted the ALJ's finding that Arnone had been disabled during 1974–76, but nevertheless concluded that Arnone was not entitled to any disability insurance benefits. The bases for this conclusion were the expiration of Arnone's insured status as of March 31, 1977 and his failure to apply for benefits before January 1981. Interpreting the applicable regulations to require Arnone to demonstrate a continuous disability between March 31, 1977 and January 1980, the Appeals Council focused on the absence of any evidence of Arnone's condition during that period. Noting evidence in the record that Arnone's condition had in fact improved during that period, the Council found that Arnone had failed to meet his burden of demonstrating the required period of disability and was therefore not entitled to any disability benefits.

Arnone again sought review in the district court under 42 U.S.C. § 405(g). He submitted to the district court an April 15, 1988 letter written by Dr. Liebman. The letter read, "[a]fter [a] complete review [of Arnone's medical file], including a review of the physical examination which I performed on 6/18/87, it is my opinion that this patient's disability on 6/18/87 was quite similar to the disability which was present in 1975."

In a July 12, 1988 Memorandum and Order, Chief Judge Platt found that the Secretary had now "specifically noted the reasons denying benefits and because such reasons rest on substantial evidence, the Secretary's decision must be affirmed."

Arnone appeals from this decision of the district court. We affirm.

## DISCUSSION

### A. Standard of Review

"In reviewing district court decisions in disability cases, we undertake our own plenary review of the administrative record to determine whether substantial evidence supports the Secretary's denial of benefits." *Havas v. Bowen*, 804 F.2d 783, 785 (2d Cir.1986); *see* 42 U.S.C. § 405(g). "[W]e may only set aside a determination which is based upon legal error or not supported by substantial evidence." *Berry v. Schweiker*, 675 F.2d 464, 467 (2d Cir. 1982) (per curiam). Substantial evidence " 'means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.' " *Richardson v. Perales*, 402 U.S. 389, 401, 91 S.Ct. 1420, 1427, 28 L.Ed.2d 842 (1971) (quoting *Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229, 59 S.Ct. 206, 216, 83 L.Ed. 126 (1938)); *see also Havas*, 804 F.2d at 785.

### B. Issues Relevant to Arnone's Entitlement to Disability Insurance Benefits

To be eligible for disability insurance benefits, an applicant must be "insured for disability insurance benefits." 42 U.S.C. §§ 423(a)(1)(A), 423(c)(1); *see also* 20 C.F.R. §§ 404.130, 404.315(a) (1988). An applicant's "insured status" is generally dependent upon a ratio of accumulated "quarters of coverage" to total quarters. 42 U.S.C. § 423(c)(1)(B); 20 C.F.R. §§ 404.101(a), 404.130–404.133 (1988). "Quarters of coverage" include quarters in which the applicant earned certain amounts of wages or self-employment income. 20 C.F.R. §§ 404.101(b), 404.140–404.146 (1988). Arnone, who claims to have become disabled after age 31, would be insured in a particular quarter only if he had accumulated twenty "quarters of coverage" over the course of a forty quarter period ending with that particular quarter. *See* 20 C.F.R. § 404.130(b).

It is uncontested that Arnone last met the 20/40 earnings requirement maintaining his "insured status" on March 31, 1977. Despite his claim to have suffered his disability over three years earlier, Arnone failed to apply for benefits while he satisfied the earnings requirement. He did not work at any time after March 31, 1977, and therefore he did not accumulate additional "quarters of coverage" and thereby satisfy

the 20/40 requirement. Therefore, ordinarily Arnone would be ineligible for disability insurance benefits after March 31, 1977.

Despite his failure to satisfy the earnings requirement at the time of his January 19, 1981 application, Arnone might nevertheless have been "insured for disability," 20 C.F.R. § 404.315, at that time if he qualified for a "period of disability," 42 U.S.C. § 416(i)(2)(A); 20 C.F.R. § 404.320 (1988). The applicable regulation explains:

A period of disability is a continuous period of time during which you are disabled.... If we establish a period of disability for you, the months in that period of time will not be counted in figuring your average earnings. If benefits payable on your earnings record would be denied or reduced because of a period of disability, the period of disability will not be taken into consideration.

20 C.F.R. § 404.320(a). This provision could operate to exclude from the relevant calculation the years in which Arnone did not work. "The [section] speaks to applicants who apply too late to receive benefits for the period of disability, but who nevertheless wish to have the years in the period of disability excluded from the number of years for which quarters of coverage are required." *Sprow v. Bowen*, 865 F.2d 207, 209 (9th Cir.1989). If eligible for a "period of disability," then, Arnone might have maintained his "insured status" until or past January 1981, when he applied for benefits.

In arguing that he is entitled to a "period of disability," Arnone's position is that he experienced a "continuous period ... during which [he] was under a disability." 42 U.S.C. § 416(i)(2)(A); *see also* 20 C.F.R. § 404.320(a). A "period of disability" can only commence, however, while an applicant is "fully insured." *See Sprow*, 865 F.2d at 209; 42 U.S.C. § 416(i)(2)(C). As described *supra*, however, the parties agree that Arnone's "insured status" lapsed as of March 31, 1977. Thus, Arnone can only be entitled to a "period of disability," if his continuous disability began before that date. 20 C.F.R. § 404.320(b)(2)

(applicant must be insured in calendar quarter he or she is disabled). In other words, regardless of the seriousness of his present disability, unless Arnone became disabled before March 31, 1977, he cannot be entitled to benefits. *See, e.g., Cruz Rivera v. Secretary of Health and Human Services*, 818 F.2d 96 (1st Cir.1986) (per curiam); *Milam v. Bowen*, 782 F.2d 1284, 1286 (5th Cir.1986); *Garner v. Heckler*, 745 F.2d 383, 390 (6th Cir.1984).

Moreover, 20 C.F.R. § 404.320(b)(3) provides that, with the exception of certain circumstances not present here, to be entitled to a "period of disability" an applicant must "file an application while disabled, or no later than 12 months after the month in which [the] period of disability ended." *See also* 42 U.S.C. § 416(i)(2)(E). For Arnone to gain the benefit of a "period of disability," then, his continuous disability must have persisted at least until January 1980, twelve months before he filed his application. *See Mullis v. Bowen*, 861 F.2d 991, 994 (6th Cir.1988).

To summarize, Arnone cannot obtain disability insurance benefits unless he is eligible for a "period of disability." He cannot be entitled to a "period of disability" unless his back problem rendered him disabled beginning no later than March 1977 and continuing at least until January 1980. *Cf. Henry v. Gardner*, 381 F.2d 191, 195 (6th Cir.), *cert. denied*, 389 U.S. 993, 88 S.Ct. 492, 19 L.Ed.2d 487 (1967).

C. *The Evidence With Respect to Arnone's Claimed Continuous Disability*

The initial burden of establishing the claimed disability was on Arnone. *See Carter v. Schweiker*, 649 F.2d 937, 940 (2d Cir.1981); 42 U.S.C. § 423(d)(5)(A); *see also Berry*, 675 F.2d at 467 (the Secretary bears the burden of showing existence of alternative substantial gainful work in national economy only if claimant satisfies burden of showing a disabling impairment that prevents him or her from performing past work). Arnone undertook to meet his burden by presenting medical evidence purporting to demonstrate a disability during

1973–76, together with further evidence from 1981 and thereafter. Despite the need to show that he suffered one continuous disability, *see Mullis*, 861 F.2d at 994, Arnone presented no evidence concerning the crucial period between March 1977 and January 1980.

In rejecting Arnone's proof of a continuous disability as insufficient, the Secretary properly attributed significance to Arnone's failure to seek any medical attention during the crucial 1977–80 period. *See Henry*, 381 F.2d at 194. Arnone's failure to present any medical evidence from that period seriously undermines his contention that he was continuously disabled during that time.

Nevertheless, we are not persuaded that the dearth of contemporaneous evidence *necessarily* precludes Arnone's entitlement to a "period of disability." In dismissing the importance of Arnone's 1973–76 evidence, the Secretary cited 20 C.F.R. § 404.1512 (1988) for the proposition that a claimant must prove that he was disabled during the time that he alleges he was disabled. It is true that Arnone must demonstrate that he was disabled when he claims to have been, including during the gap of 1977–80. Although his task would be easier if he produced medical evidence from that period, it is conceivable that he could demonstrate such a disability without contemporaneous evidence. It is possible that evidence from earlier years could demonstrate that his condition would not improve. A finding of a subsequent continuous period of disability might have been supported by such evidence. Similarly, Arnone's post–1980 evidence is not irrelevant to the question whether he had been continuously disabled since 1977. *See Carnevale v. Gardner*, 393 F.2d 889, 890 (2d Cir.1968); *Mazzella v. Secretary of Health and Human Services*, 588 F.Supp. 603, 607 n. 3 (S.D.N.Y.1984); *Selig v. Richardson*, 379 F.Supp. 594, 599–600 (E.D.N.Y.1974). Depending on the nature of the disability, such evidence could conceivably support a finding that Arnone's condition when he visited doctors in the 1980s was the same as it had been since he injured his back in 1973, or at least since 1977. *Compare*

*Guzman v. Bowen*, 801 F.2d 273, 274–75 (7th Cir.1986) (per curiam) (IQ test administered after expiration of insured status assumed to reflect condition during insured status), *with Dominick v. Bowen*, 861 F.2d 1330, 1333 (5th Cir.1988) (Secretary properly disregarded evidence of post-insured status mental disorders).

Thus, Arnone might have satisfied his burden of demonstrating that he was continuously disabled throughout 1977–80 by means of evidence only from before and after that period. Nevertheless, the Secretary found that the evidence Arnone did present failed to establish such a continuous disability. The Secretary instead found that Arnone was not continuously disabled, but rather that his condition had improved during this period. As shown *supra*, such discontinuity of the disability between the expiration of Arnone's insured status and twelve months before his application would preclude his entitlement to benefits. *See Mullis*, 861 F.2d at 994. We turn to the question whether the Secretary's decision on this point was supported by substantial evidence.

In considering the evidence from 1973–76, the Secretary did not doubt that Arnone had suffered a disabling back injury. Indeed, the Secretary found that Arnone's condition met the requirements of a "listed" impairment for the period of November 16, 1973 until October 8, 1975. *See* 20 C.F.R. Pt. 404, Subpt. P, App. 1, § 1.05C (1988). Had he applied for disability insurance benefits at that time, when he still met the earnings requirement, Arnone would have been entitled to benefits. *See Berry*, 675 F.2d at 467 (if claimant has "listed" impairment, Secretary will consider him or her unable to perform substantial gainful activity).

In this appeal, Arnone points to the Secretary's admission that Arnone had a "listed" impairment in 1973–75 and asserts "[c]learly, the disability did not disappear during all these years" and "his physical disability did not change." But we find nothing in the medical records from 1973–76 that would compel the conclusion that Arnone's condition at that time could not

have improved subsequently. Arnone's reliance on the examinations and diagnoses from late 1973 and early 1974 is unpersuasive because the April 1, 1974 operation was obviously intended to improve his condition. Admittedly, that Arnone continued to have problems with his back after his operation is demonstrated by the record. But there is nothing to indicate that there was no chance of improvement. Dr. Olson, in January 1975, seemingly recognized the potential for improvement when he recommended weight loss and physiotherapy as necessary for rehabilitation. Dr. Volpe's notation of "permanent partial disability" was ambiguous, unsupported and unexplained. Thus, while the 1973–76 medical records do suggest that the operation did not cure Arnone's problem, they do not conclusively demonstrate that Arnone's condition must necessarily have persisted unimproved throughout 1977–80.

Evidence that Arnone's condition did in fact improve can be found in the later medical records. Dr. Dutta examined Arnone on February 26, 1981. His examination indicated only slight limitation of movement of the spine. Arnone had earlier complained of numbness in his legs, particularly the left. Yet, the examination revealed that his sensory, reflex and muscular capacity in his lower extremities appeared normal. A pulse was present in the lower extremities. Similar findings are present in the January 17, 1984 report of an examination performed by Dr. Fukilman.

Dr. A.P. Tambakis also examined Arnone in January 1984. He reported that reflexes of the knees and ankles appeared equal and there was normal range of motion in the hips, ankles and knees. He observed that Arnone walked without a limp, and he commented that Arnone had no difficulty walking, standing, climbing stairs or using public transportation. His diagnosis was of only a low back sprain.

Dr. Alexander Afalonis, testifying as an expert in orthopedics, found that the medical evidence compiled in the Dutta, Fukilman and Tambakis examinations revealed that Arnone's condition had improved since the mid–1970s. Dr. Afalonis conceded that after his 1974 surgery, Arnone continued to suffer restriction of motion in the spine and sensory and neurological deficiencies in the legs. On that basis, Dr. Afalonis stated that Arnone had a "listed" disability into 1975. Nevertheless, he testified, these problems had improved, as demonstrated by the Dutta, Fukilman and Tambakis examinations. The Secretary agreed, emphasizing the "absence of reflex, sensory and muscle abnormalities" reflected in the reports of these examinations.

Attempting to minimize the effect of this evidence of his improvement, Arnone relies heavily on the 1987 and 1988 letters of Dr. Liebman. Arnone argues that "Dr. Liebman is the connecting link with respect to plaintiff's condition and he has found (1) that at the beginning and end of the period the plaintiff was disabled and (2) the disability which plaintiff suffered at the end of the period is the same as that which he suffered from in 1975." Arnone argues that Dr. Liebman's reports "reflect his personal knowledge and treatment of [Arnone] over a 13 year period" and therefore are "entitled to greater weight" than the reports of Drs. Dutta, Fukilman and Tambakis, relied on by the Secretary. Arnone argues that Dr. Liebman's opinion should have been accepted by the Secretary under our "treating physician" rule. *See Schisler v. Heckler*, 787 F.2d 76, 81 (2d Cir. 1986).

We find misleading the assertion that Dr. Liebman knew and treated Arnone's condition as his "treating physician" over a thirteen year period. Dr. Liebman did treat Arnone in 1973–74, performing the lateral fusion part of Arnone's operation. While Dr. Liebman apparently monitored Arnone's condition for some time after the surgery, there is no indication that he ever saw Arnone during the 1977–80 period. Dr. Liebman's next involvement did not come until he examined Arnone in 1987, apparently at the suggestion of Arnone's counsel.

Under these circumstances, we do not believe that the "treating physician" rule required the Secretary to be bound by Dr.

Liebman's expressed opinion that Arnone's disability was total and continuous from 1973 until 1987. Whether the "treating physician" rule is appropriately applied depends on "the nature of the ongoing physician-treatment relationship." *Schisler v. Bowen*, 851 F.2d 43, 45 (2d Cir.1988) (*Schisler II*). As we have said, "[t]he opinion of a treating physician is accorded extra weight because the continuity of treatment he provides and the doctor/patient relationship he develops place him in a unique position to make a complete and accurate diagnosis of his patient." *Mongeur v. Heckler*, 722 F.2d 1033, 1039 n. 2 (2d Cir. 1983). Here, Arnone's claim for benefits depends on his demonstrating that his disabled condition persisted continuously through the 1977–80 period. During that time, there simply was no "ongoing physician-treatment relationship," *Schisler II*, 851 F.2d at 45, between Arnone and Dr. Liebman. Having had no contact with Arnone, Dr. Liebman is not in a "unique position to make a complete and accurate diagnosis" of Arnone's condition during 1977–80. *See Mongeur*, 722 F.2d at 1039 n. 2.

Even if Dr. Liebman's opinions in 1987–88 were to be given some deference due to his previous familiarity with Arnone's condition, those opinions would not entitle Arnone to a "period of disability." While Dr. Liebman's 1987 letter summarily opined that Arnone's condition had been continuous, he failed to refute in any detail what other medical data indicated, that Arnone's condition had in fact improved. Indeed, Dr. Liebman's 1988 letter is more equivocal, stating "it is my opinion that this patient's disability on 6/18/87 was quite similar to the disability which was present in 1975." In short, Dr. Liebman's letters show little more than that Arnone appeared to again be suffering from his back troubles in 1987–88. But suffering from a "relapse" of an earlier disability or from a new disability similar to one suffered while insured does not entitle one to disability insurance benefits. *See Henry*, 381 F.2d at 195. The Dr. Liebman letters do not convincingly demonstrate that Arnone's condition had been continuous from the time his insured status lapsed. Similarly, evidence such as the 1982 report of Dr. Shaffer does indicate that Arnone was afflicted with back problems at the time. Such evidence, however, does not compel the conclusion that Arnone had been so afflicted since 1977.

## CONCLUSION

While taking account of the evidence in the record to the contrary, we conclude that there was substantial evidence to support the Secretary's conclusion that Arnone's condition had improved during the several years he did not visit any doctors. There also was substantial evidence to support the Secretary's finding that Arnone had not demonstrated a continuous "period of disability" from the time his insured status expired until twelve months before he applied for benefits. Therefore, the Secretary properly denied Arnone's application. Arnone's application.

The judgment of the district court is affirmed. The parties shall bear their own costs.