Elaine HARTFIEL, Plaintiff,

v.

Kenneth S. APFEL, Commissioner of Social Security, Defendant.

No. 97–CV–6070L.

United States District Court, W.D. New York.

Dec. 14, 2001.

Robert W. Wood, Rochester, NY, for Plaintiff.

Elaine Hartfiel, Hilton, NY, Pro se.

## DECISION AND ORDER

LARIMER, Chief Judge.

This is an action brought pursuant to 42 U.S.C. § 405(g) to review the final determination of the Commissioner of Social Security that plaintiff, Elaine Hartfiel, is not entitled to disability insurance benefits. Both plaintiff and the Commissioner now move for judgment on the pleadings. *See* F.R. Civ. P. 12(c). As discussed below, the Commissioner's decision is affirmed.

## BACKGROUND

Plaintiff initially applied for Social Security disability insurance ("SSDI") benefits on March 20, 1995. Her claimed disability was depression. Plaintiff's request was denied initially and on reconsideration. Plaintiff then filed an application for Supplemental Security Income ("SSI") benefits on July 9, 1996. The applications were consolidated, and a hearing was ultimately held before an administrative law judge ("ALJ").

█ The ALJ granted plaintiff's application for SSI benefits, finding that plaintiff was disabled as of July 1, 1996, but not disabled before that date. Because plaintiff's insured status expired on December 31, 1989, the ALJ denied plaintiff's SSDI application.[1] The Appeals Council denied review, and plaintiff commenced this action. This case was then remanded to the Commissioner pursuant to sentence six of 42 U.S.C. § 405(g) on November 18, 1997, in order to locate the tape of the hearing.

A new hearing was held on June 9, 1998, and the ALJ again granted plaintiff's SSI claim but denied plaintiff's SSDI claim. The appeals council denied review, and the case was reopened in this Court.

## DISCUSSION

Plaintiff argues that the medical evidence establishes that she was, in fact, disabled prior to the expiration of her insured status. The Commissioner argues that the ALJ's decision is supported by substantial evidence. There is no dispute as to the date plaintiff's insured status expired.

In determining whether plaintiff was entitled to receive SSI and SSDI benefits, the ALJ proceeded through the required five-step inquiry. *See Tejada v. Apfel,* 167 F.3d 770, 774 (2d Cir.1999), 20 C.F.R. §§ 404.1520, 416.920. At the first step of this inquiry, the ALJ found that plaintiff had not engaged in substantial gainful activity since October 28, 1983. (T. 15) Next, the ALJ found that plaintiff suffered from depression, a severe impairment that significantly limited her ability to do basic work activities. (T. 15)[2]; *see Tejada,* 167 F.3d at 774. However, the ALJ found that the medical evidence of record did not establish that plaintiff's depression was sufficiently severe prior to December 31, 1989. (T. 18) Thus, plaintiff was not eligible to receive SSDI benefits. The ALJ then proceeded through the remaining three steps of the inquiry, finding that plaintiff was disabled as of July 1, 1996, and eligible to receive SSI benefits. (T. 18–19)

The Commissioner's decision that plaintiff was ineligible to receive SSDI benefits must be affirmed if it is supported by substantial evidence. 42 U.S.C. § 405(g); *Rivera v. Sullivan,* 923 F.2d 964, 967 (2d Cir.1991). Substantial evidence is defined as "more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support

---

1. In order to be eligible to receive disability insurance benefits, an applicant must satisfy certain earnings requirements. *Arnone v. Bowen,* 882 F.2d 34, 37–38 (2d Cir.1989). Generally, an applicant must apply for benefits during the period in which she satisfies these earning requirements. If the applicant does not apply for benefits during this period, she may still obtain benefits if she has been under a continuous period of disability that began when she was eligible to receive benefits. Because plaintiff's insured status expired on December 31, 1989, in order to receive disability insurance benefits, plaintiff must show that her depression constitutes a continuing disability that began before this date.

2. "T." refers to the page of the Administrative Record filed by the Commissioner with his Answer.

a conclusion." *Richardson v. Perales,* 402 U.S. 389, 401, 91 S.Ct. 1420, 28 L.Ed.2d 842 (1971) (quoting *Consolidated Edison Co. v. NLRB,* 305 U.S. 197, 229, 59 S.Ct. 206, 83 L.Ed. 126 (1938)). Thus, "[i]t is not the function of a reviewing court to decide *de novo* whether a claimant was disabled." *Melville v. Apfel,* 198 F.3d 45, 52 (2d Cir.1999). Therefore, the Court must determine whether the ALJ's determination that plaintiff was not disabled prior to the expiration of her insured status is supported by substantial evidence.

Plaintiff carries the initial burden of establishing that she suffered from a continuing disability prior to December 31, 1989. *Arnone v. Bowen,* 882 F.2d 34, 38–39 (2d Cir.1989). An examination of the record, including the medical evidence submitted by plaintiff, supports the Commissioner's decision that plaintiff was not disabled prior to 1989.

■ Plaintiff was last formally employed in 1983. Plaintiff testified that she was sexually harassed by a supervisor at work. The stress of the encounters with her supervisor led plaintiff to take disability leave on November 7, 1983. A physician, Dr. Balakrishnan, found that plaintiff was unable to work, indicating that her diagnosis was dysthymic disorder. (T. 172) Plaintiff continued to be evaluated by her former employer's medical department. On January 1, 1984, plaintiff was seen by Dr. T. Wibberly Clark.[3] Dr. Clark reported that plaintiff was:

> still slightly depressed. Should soon start work in my opinion. Significant on the job interpersonal stresses per employee. States own psychiatrist does not recommend return to work so far.

(T. 180) On February 7, 1984, Dr. Clark reported that plaintiff "now states she is no longer depressed, but very fearful of work and describes repeated confrontation." (T. 180) Plaintiff was described as "not ready per own psychiatrist," and was diagnosed with depression. Plaintiff decided to take "early separation." *Id.*

Apparently, plaintiff was out of work for six months. Plaintiff reported that when she attempted to return to her previous employer, she was informed that no positions were available. (T. 110). Plaintiff later became pregnant and was "sick with blood clots." *Id.*

Plaintiff never returned to her previous employment, although she did care for her elderly aunt and uncle from 1987 to 1995. Plaintiff went to their home five or six days a week, for four or five hours. (T. 62) Plaintiff kept them company, took them to lunch, the store, the doctor, and assisted them with daily activities if they became "confused." (T. 62–63) Sometimes she would receive money or financial assistance for these services.

During this time, plaintiff was also treated by her own internist, Dr. Joel Haas. Dr. Haas began seeing plaintiff in 1985. Significantly, Dr. Haas's treatment notes make no mention of depression until February 21, 1994, when plaintiff complained of a "reactivation of depression." (T. 192)

At the behest of the Commissioner, plaintiff also underwent a consultative examination in January 1996, performed by Dr. Bernard Schwartz. In his report, Dr. Schwartz outlined the results of his interview and psychological testing. He ultimately described plaintiff as low functioning and "very badly damaged psychologically." (T. 153) He noted

---

**3.** The medical records indicate that plaintiff was treated by a "T. Wibberly Clark" or "T.W. Clark." As part of her application for benefits, plaintiff identified Clark as a physician who treated her for depression. (T. 126)

that plaintiff "has a history of recurrent major depression and is always, at her best level, chronically depressed on some level." (T. 149) It is clear . from Dr. Schwartz's report that he considered plaintiff's depression to be disabling. However, Dr. Schwartz gave no opinion as to when this condition became disabling. In fact, Dr. Schwartz described plaintiff as being unemployed for only one year, suggesting that plaintiff was able to work after 1989. (T. 150)

The ALJ discussed this medical evidence, and found that there was "insufficient evidence to establish a finding of disability prior to December 31, 1989." (T. 17) Based on my own review of the record, I am satisfied that the ALJ's decision is supported by substantial evidence. Following plaintiff's separation from her former employer in 1983, plaintiff reported that her depression was improving. Plaintiff then attempted to return to work six months later. Treatment notes of plaintiff's own physician reveal no mention of depression until 1994. Finally, from 1987 to 1995, plaintiff was able to provide care for her elderly aunt and uncle. Although plaintiff suggested at the hearing that she would not have been willing or able to perform such services for strangers, plaintiff forthrightly described this activity as "employment" on her application for benefits. (T. 64, 130)

Dr. Haas offered several opinions which, plaintiff argues, establish that she was disabled prior to December 1989. For example, in a report dated May 6, 1996, Dr. Haas described plaintiff as having a "history of depression dating back to 1984," for which she apparently "received treatment at another facility." (T. 166) He described her treatment history as follows:

"First seen in this office December 1988 with symptoms and clinical picture [consistent with] panic disorder (syncope, chest pains, etc.) first treatment by me for depression specifically 2/94 with increased anhedonia, irritability, sleep disturbances, etc. Since then visit Q 1–3 mo."

(T. 166)

Doctor Haas also wrote several letters suggesting that plaintiff was disabled prior to 1989. In a letter dated July 8, 1996, Dr. Haas noted that plaintiff had been a patient since 1988, described panic-like episodes in early 1989, and complained of depression in 1992. He indicated that he reviewed the medical records compiled by her previous employer, which suggested that complaints of severe depression caused plaintiff to leave work in 1984. He also referenced Dr. Schwartz's evaluation, which described severe depression and other emotional disturbances that originated in plaintiff's childhood. Dr. Haas stated that:

Other events have also created instability in [plaintiff's] psychologic status, including family loss, and separation from two spouses ... Although I have only been Elaine's physician since 1988, and I cannot fully attest to her ability to work back as early as 1984, my consideration of all of the above issues leads me to conclude that she may very well have been disabled from work as far back is 1984. Most certainly she has been disabled from work since 1992, and I believe this is a permanent disability.

(T. 199)

In a subsequent letter, he described the question as whether "her sexual assault in 1984 by her then supervisor ... constituted a severe enough emotional and psychological trauma as to cause her to become disabled from work at that time." He noted her "history of severe depression and emotional problems dating back to her childhood" and opined that:

It is quite definite that given this background (including a rape which occurred to Elaine at age 13), a sexual assault would have the potential to severely destabilize her depression to the magnitude of disabling her from work. Although again, I was not her treating physician at the time, I am confident of this assertion.

(T. 246)

 The Commissioner must give "the medical opinion of a claimant's treating physician . . . controlling weight if it is well supported by medical findings and not inconsistent with other substantial record evidence." *Shaw v. Chater*, 221 F.3d 126, 134 (2d Cir.2000). Likewise, "[a] treating physician's retrospective medical assessment of a patient may be probative when based upon clinically acceptable diagnostic techniques." *Perez v. Chater*, 77 F.3d 41, 48 (2d Cir.1996).

Here, an examination of the record supports the ALJ's holding that the opinions offered by Dr. Haas suggesting that plaintiff was disabled prior to 1989 were not supported by the medical evidence or other evidence of record. As previously noted, Dr. Haas's treatment notes make no mention of depression until 1994. Although plaintiff was diagnosed with depression in late 1983, the record does not suggest that this condition rendered her disabled as of December 31, 1989 and that this disability was continuous in nature. Dr. Clark reported that plaintiff should "soon start work," and plaintiff, by her own admission, attempted to do so after a six-month absence. Plaintiff also cared for her elderly aunt and uncle, described by her as "work" until 1995. The record amply supports the ALJ's determination that Dr. Haas's opinions suggesting the onset date of plaintiff's disability were not corroborated by the record.

Moreover, the opinions expressed by Dr. Haas were equivocal and qualified, and thus are not convincing evidence of a continuing disability. *Arnone*, 882 F.2d at 41 (rejecting equivocal letter from treating physician, which stated that patient's present disability was "quite similar" to earlier disability). Dr. Haas suggests that plaintiff "may very well have been disabled from work as far back is 1984," but that plaintiff has "[m]ost certainly . . . been disabled . . . since 1992." In his final letter, Dr. Haas opined that plaintiff's sexual harassment at work "would have the potential" to create disabling depression. These statements, when viewed in conjunction with the evidence, are hardly an affirmative indication of a continuing disability.

## CONCLUSION

The Commissioner's decision is supported by substantial evidence. Plaintiff's motion for judgment on the pleadings (Dkt.# 20) is denied, and the Commissioner's motion for judgment on the pleadings (Dkt.# 21) is granted.

IT IS SO ORDERED.