WILLIAM F. KUNTZ, II, United States District Judge:
Plaintiff Solomon Blisko ("Plaintiff") brings this action pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3), alleging the Acting Commissioner of the Social Security Administration (the "Commissioner" or "Defendant") improperly denied Plaintiff's applications for Social Security Disability Insurance ("SSDI") and Supplemental Security Income ("SSI") benefits. Compl., ECF No. 1. Plaintiff moves for judgment on the pleadings under Rule 12(c) of the Federal Rules of Civil Procedure. Defendant also made a cross motion for judgment on the pleadings. For the reasons set forth below, Defendant's motion is GRANTED, and Plaintiff's motion is DENIED.
BACKGROUND AND PROCEDURAL HISTORY
Plaintiff was born on September 12, 1958. See Administrative Record ("Tr.") at 39, ECF No. 15. He has a doctoral degree and worked as a dentist from January 1984 until September 2012. Id. at 40, 144, 153. In or about 2011, Plaintiff was in a motor vehicle accident, which impaired the use of his right arm. Id. at 41, 43. Although he continued working in his private dentistry practice for two years after the accident, he decreased his productivity. Id. at 41. Plaintiff reported in 2014, he worked as a dental consultant helping accident victims prepare dental injury reports, which *144 he continued to do occasionally through the time of his hearing on September 24, 2015. Id. at 42. Plaintiff also reported engaging in "a lot of volunteer work" for non-profit organizations. Id. at 47.
On September 27, 2013, Plaintiff filed an application for disability insurance benefits under the Social Security Act (the "Act"), alleging disability due to ulnar nerve damage since September 14, 2012. Id. at 131-34, 152.[1] Plaintiff's application was denied on March 4, 2014. Id. at 68-79. Plaintiff then timely requested a hearing and appeared before Administrative Law Judge ("ALJ") April Wexler on September 24, 2015. Id. at 33-56, 80-81. At the hearing, Plaintiff testified on his own behalf and was represented by counsel. Id. at 35-53. No medical experts testified at the hearing but vocational expert Joseph Atkinson provided testimony. Id. at 53-56. In a decision issued on November 12, 2015, ALJ Wexler found Plaintiff was not disabled. Id. at 18-29. This decision became the final decision of the Commissioner when the Appeals Council denied Plaintiff's request for review on March 8, 2017. Id. at 1-4.
Plaintiff then filed a complaint with the United States District Court for the Eastern District of New York on March 14, 2017. Compl., ECF No. 1. Plaintiff and Defendant both move for judgment on the pleadings under Federal Rule of Civil Procedure 12(c). See Notice of Mot. for J. on the Pleadings ("Pl.'s Mot."), ECF No. 11.; Cross Mot. for J. on the Pleadings ("Def.'s Mot."), ECF No. 13.
STANDARD OF REVIEW
When a claimant challenges a denial of disability benefits by the Social Security Administration, the Court's function is not to evaluate de novo whether the claimant has a disability but rather to determine "whether the correct legal standards were applied and whether substantial evidence supports the decision." Butts v. Barnhart , 388 F.3d 377, 384 (2d Cir. 2004) ; see also 42 U.S.C. § 405(g) ("The findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive[.]"); Moran v. Astrue , 569 F.3d 108, 112 (2d Cir. 2009) (applying "substantial evidence" standard of review). Substantial evidence is "more than a mere scintilla"-it is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Burgess v. Astrue , 537 F.3d 117, 127 (2d Cir. 2008) (internal quotation marks and citations omitted). "The substantial evidence standard is 'a very deferential standard of review-even more so than the 'clearly erroneous' standard,' and the Commissioner's findings of fact must be upheld unless 'a reasonable factfinder would have to conclude otherwise .' " Banyal v. Berryhill , 17-cv-1366, at 2 (2d Cir. Apr. 30, 2019) (quoting Brault v. Social Sec. Admin., Comm'r , 683 F.3d 443, 448 (2d Cir. 2012) (per curiam) (emphasis in original)). In determining whether the record contains substantial evidence to support a denial of benefits, the reviewing court must examine the entire record, weighing the evidence on both sides to ensure the claim "has been fairly evaluated." Brown v. Apfel , 174 F.3d 59, 62 (2d Cir. 1999) (quoting Grey v. Heckler , 721 F.2d 41, 46 (2d Cir. 1983) ).
It is the function of the Social Security Administration-not the federal district court-to "weigh the conflicting evidence in the record" and resolve such conflicts.
*145 Clark v. Comm'r of Soc. Sec. , 143 F.3d 115, 118 (2d Cir. 1998) ; see also Cage v. Comm'r of Soc. Sec. , 692 F.3d 118, 122 (2d Cir. 2012) ("In our review, we defer to the Commissioner's resolution of conflicting evidence."). "While the ALJ need not resolve every conflict in the record, 'the crucial factors in any determination must be set forth with sufficient specificity to enable [the reviewing court] to decide whether the determination is supported by substantial evidence.' " Calzada v. Astrue , 753 F.Supp.2d 250, 268-69 (S.D.N.Y. 2010) (Sullivan, J.) (quoting Ferraris v. Heckler , 728 F.2d 582, 587 (2d Cir. 1984) ). To meet this burden, the ALJ must " 'adequately explain his reasoning in making the findings on which his ultimate decision rests' " and must " 'address all pertinent evidence.' " Kane v. Astrue , 942 F.Supp.2d 301, 305 (E.D.N.Y. 2013) (Kuntz, J.) (quoting Calzada , 753 F.Supp.2d at 269 ). Moreover, "an ALJ's failure to acknowledge relevant evidence or to explain its implicit rejection is plain error." Kane , 942 F.Supp. 2d at 305 (internal quotation marks and citations omitted). If the ALJ applied an improper legal standard, or if there are gaps in the administrative record, then remand is warranted. See Rosa v. Callahan , 168 F.3d 72, 82-83 (2d Cir. 1999).
DISCUSSION
I. Determination of Disability
A. Applicable Law
An applicant must be insured for disability insurance benefits to qualify for disability insurance benefits. Arnone v. Bowen , 882 F.2d 34, 37 (2d Cir. 1989) (quoting 42 U.S.C. §§ 423(a)(1)(A), 423(c)(1) ). An applicant must also satisfy certain earning requirements and must apply for benefits during the period in which he satisfies those earning requirements. Hartfiel v. Apfel , 192 F.Supp.2d 41, 42 n.1 (W.D.N.Y. 2001) (Larimer, J.) (internal citation omitted).[2] If the applicant fails to apply for benefits during this period, he may nevertheless obtain benefits if he has been under a continuous period of disability starting from the date he was eligible to receive benefits. Id. To be eligible for SSI benefits, an individual must be "aged, blind, or disabled" as defined in 42 U.S.C. § 1382c and, inter alia , meet the resource and income limits specified in the Act.
For purposes of both SSDI and SSI benefits, disability is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A). The impairment in question must be of "such severity that [the claimant] is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy." Id. §§ 423(d)(2)(A), 1382c(a)(3)(B).
To evaluate a disability claim, the Commissioner must apply the five-step sequential process set forth in 20 C.F.R. §§ 404.1520, 416.920. See, e.g. , Rosa , 168 F.3d at 77-78 (laying out the five-step process for evaluating disability claims). At the first step, the Commissioner must determine whether the claimant is engaged in "substantial gainful activity." 20 C.F.R. §§ 404.1520(a)(4)(i), 416.920(a)(4)(i). If not, the second step requires the Commissioner to determine whether the claimant has a "severe medically determinable physical or mental impairment."
*146 Id. §§ 404.1520(a)(4)(ii), 416.920(a)(4)(ii). If the claimant has such an impairment, the Commissioner progresses to the third step and must determine whether the impairment or combination of impairments meets or equals one of the listings in Appendix 1 of the regulations. Id. §§ 404.1520(a)(4)(iii), 416.920(a)(4)(iii). If the claimant's impairment does not match any of the listings, the fourth step requires the Commissioner to determine whether the claimant's residual functional capacity ("RFC") allows the claimant to perform past relevant work. Id. §§ 404.1520(a)(4)(iv), 416.920(a)(4)(iv). If the claimant cannot perform past relevant work, the final step requires the Commissioner to determine whether the claimant can perform any job based on his or her RFC and vocational considerations-work experience, age, and education. Id. §§ 404.1520(a)(4)(v), 416.920(a)(4)(v). The claimant bears the burden of proving the first four steps, at which point the burden shifts to the Commissioner at the fifth step. Rosa , 168 F.3d at 77-78.
B. The ALJ's Decision
On November 12, 2015, ALJ Wexler issued a decision following the five-step procedure for evaluating disability claims. See Tr. 18-29. At the first step, she determined Plaintiff had not engaged in substantial gainful activity since the alleged onset date of September 12, 2013. Id. at 23. At the second step, she found Plaintiff had severe impairments of ulnar nerve damage, cervical impairment, and right shoulder impairment, all of which caused significant vocational limitations in Plaintiff's ability to perform basic work. Id. At the third step, the ALJ found, after review of the record, the combination of Plaintiff's impairments failed to meet or medically equal the severity of one of the listed impairments in Appendix 1 of 20 C.F.R. Part 404, Subpart P. Id. at 23-24. The ALJ determined Plaintiff has the RFC to perform light work,[3] but is restricted to certain limiting parameters including: lifting and carrying 20 pounds occasionally and 10 pounds frequently; sitting, standing, and walking six hours out of an eight-hour day; with frequent fine and gross motor manipulation with the right upper extremity. Id. at 25. At the fourth step, the ALJ found Plaintiff could perform past relevant work as a dentist, and such work did not require the performance of work-related activities precluded by Plaintiff's RFC. Id. at 28. The ALJ relied on the vocational expert's testimony in concluding an individual with Plaintiff's age, education, work experience, and RFC could perform the Plaintiff's past relevant work as a dentist as it is actually and generally performed. Id. at 29. As a result of the five-step analysis, the ALJ determined Plaintiff was not disabled within the meaning of the Act from September 12, 2013, the alleged onset date, through November 12, 2015, the date of the ALJ's decision. Id.
II. Substantial Evidence Supports the ALJ's Disability Determination
Plaintiff argues remand is warranted because the ALJ's decision was not supported *147 by substantial evidence, and the ALJ failed to properly apply the relevant legal standards. See Pl.'s Mot. at 9-11. Specifically, Plaintiff argues the ALJ "accorded little or no weight to the functional assessments of the physicians who treated or examined the plaintiff" and should have accorded more weight to the opinion of Dr. Bronfin's opinion statement. Id. at 11. Plaintiff further contends the ALJ could have reached out to Dr. Bronfin to discuss any doubts regarding the reliability of, or the basis for, Dr. Bronfin's functional evaluation. Id. at 12. Defendant argues the ALJ's decision is supported by substantial evidence. Def.'s Mot. at 12-16. In response to Plaintiff's arguments, Defendant argues the ALJ's RFC finding was supported by the report of Dr. Skeene, and Dr. Bronfin's opinion is implausible and inconsistent with the medical record and narrative evidence. Id. at 13-14. Defendant also argues the ALJ was not required to "further develop the record" by reaching out to Dr. Bronfin for further information. Id. at 15.
For the reasons discussed below, the Court finds there is substantial evidence to support the Commissioner's decision, and the ALJ properly applied the relevant legal standards in affording appropriate weight to the opinions of the treating physicians.
A. Plaintiff's RFC
RFC is "what an individual can still do despite his or her limitations." Melville v. Apfel , 198 F.3d 45, 52 (2d Cir. 1999) (internal quotation marks and citation omitted). The ALJ must determine an individual's RFC after considering her "physical abilities, mental abilities, symptomology, including pain and other limitation which could interfere with work activities on a regular continuing basis." Pardee v. Astrue , 631 F. Supp. 2d 200, 210 (N.D.N.Y. 2009) (Mordue, J.) (citing 20 C.F.R. § 404.1545(a) ). Regulations under the Act also require an ALJ "to take the claimant's reports of pain and other limitations into account, but the ALJ is not obligated to accept the claimant's subjective complaints without question." Genier v. Astrue , 606 F.3d 46, 49 (2d Cir. 2010). But Plaintiff's "assertions of pain alone " are insufficient: The regulations lay out a two-step process to evaluate alleged symptoms of pain and limitations. Id. First, "the ALJ must decide whether the claimant suffers from a medically determinable impairment that could reasonably be expected to produce the symptoms alleged." Id. (citing 20 C.F.R. § 404.1529(b) ). Second, "the ALJ must consider 'the extent to which [the claimant's] symptoms can reasonably be accepted as consistent with the objective medical evidence and other evidence' of record." Id. (quoting 20 C.F.R. § 404.1529(a) ). In making a disability determination, "[t]he ALJ will consider all of the available medical evidence, including a claimant's statements, treating physician's reports, and other medical professional reports." Fontanarosa v. Colvin , 13-CV-3285, 2014 WL 4273321, at *12 (E.D.N.Y. Aug. 28, 2014) (Brodie, J.) (citing Whipple v. Astrue , 479 F. App'x 367, 370-71 (2d Cir. 2012) ).
Here, the ALJ determined Plaintiff had the RFC to perform light work, with some restrictions for lifting, carrying, sitting, standing, and walking and limited motor manipulation of the right upper extremity. Tr. at 25-28. To arrive at that determination, the ALJ "considered all symptoms and the extent to which these symptoms can reasonably be accepted as consistent with the objective medical evidence and other evidence," as well as opinion evidence. Id. at 25 (citing 20 C.F.R. § 404.1529 ; Social Security Rulings §§ 96-4p, 96-7p). The ALJ first considered Plaintiff's own statements of pain, *148 which included weakness in his right hand, difficulty typing, and dropping objects if held only by his right hand, Id. The ALJ also assessed the medical records from Dr. Skeene, a specialist in emergency medicine. Id. at 25-26. According to a physical examination conducted on February 24, 2014, Dr. Skeene diagnosed Plaintiff with "disc disease of the cervical spine with right radiculopathy," "right ulnar nerve compression," and "hypertension." Id. In Dr. Skeene's opinion, "there is moderate limitation for reaching and heavy lifting due to limited [range of motion] of the cervical spine, right shoulder, and decreased strength of the right upper extremity." Id. at 244. The ALJ also evaluated the records of Dr. Bronfin, a neurologist who treated Plaintiff. See id. at 26. Over the course of four visits, Dr. Bronfin diagnosed Plaintiff with polyneuropathy, right ulnar weakness, and cervical radiculopathy at C7, among others. Id. at 246, 249, 252, 255. Each of those visits consisted of medication management and refills. Id. For purposes of complete review of the record, the ALJ also considered other medical evidence, including: a thyroid ultrasound from February 16, 2011 that was positive for modules, enlargement and inhomogeneity; a colonoscopy study from December 12, 2012 that was positive for polyps; and records from visits to Plaintiff's family doctor, Hebert Lempel, MD. Id. at 26-27. Dr. Lempel noted, from a musculoskeletal perspective, Plaintiff had a "normal gait, no clubbing, cyanosis and [a] full range of motion of joints[ ] [for] all [four] extremities." Id. at 227. The medical records reflect references to physical and occupational therapy, but none none of those records indicate surgery or additional testing would be necessary for Plaintiff's condition.
Ultimately, the ALJ found the medical evidence supported the conclusion Plaintiff "retains the capacity to function adequately to perform many basic activities associated with work." Id. at 27-28. Although the ALJ found Plaintiff's "medically determinable impairments could reasonably be expected to cause the alleged symptoms," the ALJ did not find the statements regarding "the intensity, persistence, and limiting effects" of those symptoms entirely credible. Id. The ALJ found "little evidence in this record that the claimant's daily living activities have been significantly restricted based upon his impairments." Id. Although Plaintiff's medical records reveal he has limitations, which the ALJ evaluated in determining Plaintiff had the RFC to perform light work, substantial evidence supports the ALJ's decision in this case.
B. The ALJ Properly Evaluated the Medical Evidence Available
The ALJ must resolve conflicts in the medical evidence. See Cage v. Comm'r of Soc. Sec. , 692 F.3d 118, 122 (2d Cir. 2012) ("[W]e defer to the Commissioner's resolution of conflicting evidence." (citation omitted)). Although an ALJ generally should "give more weight to medical opinions from ... treating sources," when the opinion from the treating physician is "inconsistent with the other substantial evidence in [the] case record," the ALJ must determine the weight to give the medical opinion as outlined in 20 C.F.R. § 404.1527. 20 C.F.R. § 404.1527(c)(2) ; see Tricarico v. Colvin , 681 F. App'x 98, 100 (2d Cir. 2017) ("[T]he ALJ need not grant the treating physician's assessment controlling weight where the opinion is inconsistent with other evidence in the record, including the opinions of other medical experts." (citation omitted)); see, e.g. Halloran v. Barnhart , 362 F.3d 28, 31-32 (2d Cir. 2004) (holding treating physician's opinion, submitted in the form of standardized, multiple choice reports, failed to sustain controlling weight).
*149 If the ALJ does not afford a treating physician's opinion controlling weight because it is not well-supported by medical findings or is inconsistent with the other substantial evidence in the case record, then the ALJ must evaluate how much weight to afford the treating medical opinion and other medical opinions using several factors. See Shaw v. Chater , 221 F.3d 126, 134 (2d Cir. 2000) ; Marinello v. Comm'r of Soc. Sec. , 98 F.Supp.3d 588, 595 (E.D.N.Y. 2015) (Kuntz, J.). These factors include: (1) length of the treatment and frequency of the examination; (2) the nature and extent of the treatment relationship, including the length of the relationship and the frequency of examination; (3) the evidence in support of each opinion, such as medical signs, laboratory findings, and more complete explanations; (4) the extent to which the opinion is consistent with the record as a whole; (5) whether the medical provider is a specialist; and (6) any other relevant factors. 20 C.F.R. §§ 404.1527(c), 416.927(c). The Second Circuit has instructed that remand is appropriate "when the Commissioner has not provided 'good reasons' for the weight given to a treating physician[']s opinion," Halloran v. Barnhart , 362 F.3d at 33, or when the ALJ's opinion "do[es] not comprehensively set forth reasons for the weight assigned to a treating physician's opinion," Marinello , 98 F.Supp.3d at 595.
After carefully considering the entire record and the ALJ's opinion, the Court concludes the ALJ properly applied the substance of the treating physician rule. Here, the ALJ evaluated each medical opinion on the record and afforded them appropriate Weight. Tr. at 25-27. Plaintiff has two treating physicians in this case: Dr. Skeene and Dr. Bronfin. Dr. Skeene conducted a physical examination of Plaintiff for a consultative examination. Id. at 242-44. Dr. Skeene noted Plaintiff "appeared to be in no acute distress" and was "[a]ble to rise from [the] chair without difficulty." Id. at 242. Dr. Skeene further found despite some limited range of motion in Plaintiff's right arm, his hand and finger dexterity remained intact, and his grip strength was full bilaterally (5/5), supporting a lack of functional limitations regarding Plaintiff's use of his hands. Id. at 243. Plaintiff told Dr. Skeene "he is able to shower, bathe, dress independently," and "do limited cooking, cleaning, laundry, and shopping." Id. at 242. Citing Dr. Skeene's medical source statement, the ALJ noted Dr. Skeene "opined that the claimant had moderate limitation for reaching and heavy lifting." Id. at 26. The ALJ gave Dr. Skeene's opinion "some weight" even though it was "not supported by any clinical diagnostic testing in the record." Id. at 26.
Next, the ALJ evaluated form reports prepared by Dr. Bronfin, a neurologist, for Plaintiff's insurance company. Id. The ALJ noted: "Dr. Bronfin precluded the claimant from lifting and carrying anything or operating heavy machinery, as well as an up to 25%[ ] limitation in overhead reaching. Dr. Bronfin's opinion is supported by notes and reports spanning from July 17, 2013 through July 16, 2015." Id. In form statements containing different fields for assessing the functioning of upper extremities, Dr. Bronfin opined Plaintiff could not lift objects up to ten pounds. Id. at 262. Dr. Bronfin also concluded Plaintiff could "never" perform fine finger movements, hand-eye coordinated movements, or pushing and/or pulling with both his left and right arms. Id. Dr. Bronfin further opined Plaintiff is "unable to use [his right] hand due to weakness and loss of dexterity" and that his condition was "progressive and nonreversible." Id. at 262, 266.
The ALJ did not find Dr. Bronfin's opinion entirely persuasive because it was supported *150 by only "check-off form assessments" that do not contain explanations of the bases of those conclusions. Id. at 26. The Court agrees. Like the multiple-choice assessments submitted by the treating physician in Halloran , the multiple choice, check-off form submitted by Dr. Bronfin in this case is not particularly informative. Ultimately, the ALJ properly afforded "little weight" to Dr. Bronfin's "check-off" form opinions because they were inconsistent with the record as a whole. Id. For example, Dr. Bronfin's findings conflict with the medical source statement and physical examination of Plaintiff's other treating physician, Dr. Skeene. Plaintiff reported to Dr. Skeene he experienced difficulty only with lifting objects greater than ten pounds. See id. at 241 ("[R]ight arm pain is aggravated by reaching and lifting greater than 10 1b."). In contrast, Dr. Bronfin concluded Plaintiff did not have the ability to lift objects no matter their weight. Id. at 262. And while Dr. Skeene noted Plaintiff's hand and finger dexterity were intact and that he retained full grip strength bilaterally, Dr. Bronfin reported Plaintiff had suffered a "loss of dexterity" in his right hand. Indeed, throughout the period at issue, Plaintiff reported performing volunteer work for an ambulance service, lecturing at his synagogue several times a week, driving a car, and engaging in light chores and personal care. Id. at 40, 48-49, 53, 159-60, 168. Moreover, no other evidence or testimony on the record supports Dr. Bronfin's finding that Plaintiff has limitations in his left arm. Because the Court finds substantial evidence supports the ALJ's decision, the ALJ was not required to re-contact Dr. Bronfin for further information as Plaintiff would have her do. See 20 C.F.R. § 404.1512(e). Thus, the Court concludes the ALJ appropriately assigned little weight to the check-off form opinions of Dr. Bronfin because "they are not consistent with the record as a whole and the findings are not supported by any clinical diagnostic testing in the record." Tr. at 26.
CONCLUSION
For the foregoing reasons, Plaintiff's motion for judgment on the pleadings, ECF No. 11 is DENIED, Defendant's motion for judgment on the pleadings, ECF No. 13, is GRANTED, and Defendant's determination denying Plaintiff SSDI and SSI benefits is affirmed. The Clerk of Court is directed to close this case.
SO ORDERED.

During the administrative hearing, Plaintiff amended his alleged onset date to September 12, 2013. Tr. 37.

The ALJ determined Plaintiff meets the insured status requirements of the Act through December 31, 2016. Tr. at 23.

"Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls. To be considered capable of performing a full or wide range of light work, you must have the ability to do substantially all of these activities. If someone can do light work, we determine that he or she can also do sedentary work, unless there are additional limiting factors such as loss of fine dexterity or inability to sit for long periods of time." 20 C.F.R. § 404.1567(b).